HARRY D. FARNOW, Petitioner, *v.* DEPARTMENT
1 OF THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA, in and
for the County of Clark Et Al., Respondents.

No. 3465

February 24, 1947.                    178 P. 2d 371.

*Platt & Sinai,* of Reno, and *McNamee & McNamee,* of Las Vegas, for Petitioner.

*Thatcher, Woodburn and Forman,* of Reno, and *Morse & Graves,* of Las Vegas, for Respondents.

## OPINION

By the Court, HORSEY, J.:

Las Vegas Aerie No. 1213, Fraternal Order of Eagles, brought an action in the Eighth judicial district court,

Clark County, against Harry D. Farnow, petitioner herein, praying judgment for the restitution of certain valuable premises in the business district of the city of Las Vegas. Farnow's demurrer to the complaint was overruled, whereupon he answered the complaint, and thereafter plaintiff served and filed its reply.

Plaintiff's said action was brought under the provisions of the forcible entry and detainer chapter of the civil practice act, secs. 9132–9152, N.C.L. 1929: "At any time after the filing of complaint and issuance of summons, upon application therefor, the court may issue a temporary writ of restitution; provided, however, that before the issuance of such writ the party applying therefor shall execute, present for approval of the court and file a good and sufficient bond, provided by law, in the sum of not less than five hundred ($500) dollars, to indemnify the party or parties against whom the temporary writ may be issued." Stats. of Nevada 1939, chap. 135, pp. 171, 172, 2 N.C.L.Supp. 1931–1941, p. 1232, sec. 9140.

After filing its said reply and before the expiration of the time allowed by law for defendant to demur thereto, plaintiff, acting under the provisions of said amendatory provision, made an ex parte application to the district court for a temporary writ of restitution. That court without any notice to defendant Farnow, directed the issuance of the writ after first requiring plaintiff to furnish a bond in the sum of $5,000. Upon being issued, the writ was placed in the hands of the sheriff of Clark County. Thereupon Farnow applied to this court for a writ of prohibition, and an alternative writ was issued.

In his application petitioner alleges, among other things, that he conducts a drug store business in the premises described in the complaint; that the volume of business for several months preceding the filing of his application had exceeded the sum of $500 gross per day; that he believes the amount of his said gross income will increase day by day; that he employs 15 persons to

handle said business; that licensed pharmacists dispense prescriptions needed for the health of the community; and that unless the sheriff be restrained from serving the writ, Farnow will be damaged to the extent of $25,000 or more. He further alleges that the provisions of said amended sec. 9140, insofar as they provide for an ex parte issuance of a temporary writ of restitution, "are unconstitutional and void in that they deprive the person against whom the writ is issued of due process of law; that the designation of a bond in the sum of $5,000.00 by said District Court in said particular action was in excess of its jurisdiction, was discriminatory against your petitioner, and if said writ of restitution is allowed to be enforced said petitioner will be irreparably damaged thereby; that the amount of said bond is inequitable. * * * that the provisions of Nevada Compiled Laws 9140, as amended, are discriminatory and unconstitutional insofar as they provide for an ex parte issuance of a temporary writ of restitution without an appeal therefrom."

Respondents, as a return to the alternative writ, demurred to the petition upon the ground that it does not state facts sufficient to constitute a ground for the issuance of a writ of prohibition. Thereafter said petition and return came on for hearing, and upon submission of the matters argued, it was stipulated that the court might enter its ruling upon reaching a decision—the opinion to be filed later at the convenience of the court. After due consideration, this court made the following order: "It is now ordered and adjudged that the alternative writ heretofore issued be, and the same is hereby, made final, upon the ground that the lower court was without jurisdiction to make the orders complained of in the petition and exceeded its jurisdiction in making said orders, and that petitioner has no other plain, speedy and adequate remedy in the ordinary course of law. Said court lacked jurisdiction and exceeded its jurisdiction because the last sentence of amended sec.

9140, N.C.L. 1929, Stats. of Nevada, 1939, chap. 135, pp. 171, 172, 2 N.C.L.Supp. 1931–1941, p. 1232, is unconstitutional in that it violates the provisions of the due process clause of the state and federal constitutions. [Const. Nev. art. 1, sec. 8; Const.U.S. Amend. 14]. It is further ordered and adjudged that the respondents be permanently restrained from any further proceedings under said statutory provision."

Before any opinion was prepared or filed by the court, respondents filed a petition for rehearing, to which petitioner thereafter filed his answer. We granted a rehearing, and oral arguments thereon were subsequently presented by counsel for the respective parties. This opinion is intended to cover both our original ruling and the rehearing.

The single sentence added to sec. 9140 by way of amendment in 1939 is the only statutory provision in this state dealing with writs of restitution in forcible entry or unlawful detainer proceedings. Does this amendment violate the due process clauses of the Nevada and United States constitutions? After careful reconsideration on the rehearing we have concluded our original decision was correct.

The amendment empowers a landlord to dispossess his tenant without notice or an opportunity to be heard. It is the most drastic remedy we know of in cases of this kind. In State ex rel. German Sav. & Loan Soc. v. Prather, 19 Wash. 336, 53 P. 344, 67 Am.St.Rep. 729, one of the authorities relied on by respondents, the constitutionality of a statute was upheld, though it contained the following provision: "The plaintiff, at the time of commencing an action of forcible entry or forcible detainer or unlawful detainer, or at any time afterwards, may apply to the judge of the court in which the action is pending for a writ of restitution restoring to the plaintiff the property in the complaint described, and the judge shall order a writ of restitution to issue." 2 Ballinger's Codes and Statutes, sec. 5534, pp. 1545,

1546. The statute required, as does the Nevada amendment, that plaintiff must furnish a bond before the writ issue.

But the Washington statute contained these further provisions: "The sheriff shall, upon receiving the writ of restitution, forthwith serve a copy thereof upon the defendant, his agent or attorney, or a person in possession of the premises, and shall not execute the same for three days thereafter, within which time the defendant, or those in possession of the premises, may execute to the plaintiff a bond to be filed with and approved by the clerk of the court, in such a sum as may be fixed by the judge, with two or more sureties to be approved by the clerk of said court, conditioned that they will pay the plaintiff such sum as the plaintiff may recover for the use and occupation of the said premises, or any rent found due, together with all damages the plaintiff may sustain by reason of the defendant occupying or keeping possession of said premises, and also all the costs of the action. * * * The plaintiff or defendant at any time, upon two days' notice to the adverse party, may apply to the court or any judge thereof for an order raising or lowering the amount of any bond in this chapter provided for. Either party may, upon like notice, apply to the court or any judge thereof for an order requiring additional or other surety or sureties upon any such bond. Upon the hearing of any application made under the provisions of this section evidence may be given. The judge after hearing any such application shall make such an order as shall be just in the premises. 2 Ballinger's Codes and Statutes, secs. 5535, 5536, p. 1546.

Thus it is seen that under the provisions of the Washington statute the sheriff could not execute the writ for three days after receiving it; and within that time, as the court in the Prather case points out, the defendant could execute a counter bond. Also, either plaintiff or defendant could apply for a raising or lowering of bonds

and for the requiring of additional or other sureties. Notwithstanding these provisions designed to protect the defendant (provisions entirely absent in the Nevada statute), the supreme court of Washington, in Big Bend Land Co. v. Huston, 98 Wash. 640, 168 P. 470, 472, referred to the remedy by writ of restitution as "a summary process at best severe and drastic in character."

Mehlin v. Ice, 56 F. 12, 15, another case relied upon by respondents, came up to the circuit court of appeals for the Eighth circuit from the United States court in the Indian Territory. The Cherokee statute involved in that case authorized the clerk to issue a writ of ejectment, but only after 10 days notice and a hearing. The court said in part: "Complaint is made that the mode of proceeding prescribed by the statute is too summary to be regarded as due process of law under the constitution of the United States. But it is very clear the act in no manner conflicts with that instrument. The proceedings are not so summary as the proceedings authorized in like cases by the statutes of some of the states. By the law of Arkansas, when a complaint is filed in case of forcible entry and detainer, it is made the duty of the clerk to forthwith issue a writ to dispossess the defendant, without any preliminary inquiry whatever into the truth of the complaint." But an examination of the Arkansas forcible entry and detainer statutes, Pope's Dig. sec. 6032 et seq., discloses that if the defendant desires to retain possession of the premises he may so signify to the officer, who shall then give him five days in which to execute a counter bond, and if such bond be given, then the premises are left in defendant's possession. The statute also provides that the defendant may except to the plaintiff's bond. There are no such provisions in the Nevada statute.

There seem to be very few states in which provision is made for temporary writs of restitution in forcible entry or unlawful detainer cases. We know of only five states in which such statutes exist—Arkansas, California,

Nevada, Texas and Washington. In Texas, Vernon's Ann.Civ.St. art. 3978, as in Washington and Arkansas, the defendant is given time (six days after service of citation) within which to furnish a counter bond, and if the bond be furnished, the premises remain in his possession.

In 1937 California's chapter on forcible entry and detainer was amended by the addition of a section providing in part that: "Upon filing the complaint the plaintiff may have immediate possession of the premises by a writ of possession issued by the judge or justice and directed to the sheriff of the county for execution, where it appears to the satisfaction of the judge or justice, from the verified complaint, or from an affidavit filed by or on behalf of the plaintiff, that the defendant is insolvent, or has no property that is subject to execution sufficient to satisfy the amount of damages sought to be recovered by the plaintiff, or resides out of the State, or has departed from the State, or cannot, after due diligence be found within the State, or conceals himself to avoid the service of summons." Code Civ.Proc. sec. 1166a. Harsh as this statute is, it is yet less drastic than our own, for it is only in one or more of six contingencies that plaintiff is given the right of immediate possession. It may be observed that the California statute contains a section, Code Civ.Proc. sec. 1177, similar to our sec. 9150, N.C.L.1920; notwithstanding this, a serious question has already been raised concerning the constitutionality of the provision authorizing a writ of possession without notice or hearing. Southern California Law Review (November, 1937), vol. 11, pp. 30, 31.

Respondents, in their petition for rehearing, have referred us to sec. 8909, N.C.L.1929, and, in response to an inquiry by the court upon the rehearing as to whether any additional sections, other than those cited in said petition, were claimed by respondents to be applicable, have further referred us to sec. 8921, N.C.L. 1929 and

sec. 8913.01, N.C.L.Supp. 1931–1941 as pertinent and applicable to, and by implication included in, the procedure under sec. 9140, N.C.L. 1929, as amended.

On page 3 of said petition, the respondents stated: "Section 9140 is a part of the Civil Practice Act and as such must be construed with the other sections of that act." Section 8909, N.C.L. 1929, a portion of the same act, reads as follows: "Every direction of a court or judge made or entered in writing, and not included in a judgment, is denominated an order. An application for an order is a motion."

Respondents on said page 3 have stated further that: "It will be noted, therefore, that in the instant case the Las Vegas Aerie No. 1213, was required to move the court for an order issuing the temporary writ of restitution. Under the settled procedure in this state, no motion may be made without notice or ex parte except those known as 'motions of course,' and those required in an emergency."

The question is, can the provisions of these sections cited by respondents, and particularly sec. 8909, in conjunction with district court rule X, be made applicable, and are same effective, if they could be applied in connection with sec. 9140, N.C.L. 1929, as amended by the act of 1939, Statutes 1939, chap. 135, pp. 171, 172, 2 N.C.L. Supp. 1931–1941, p. 1232, to provide, by implication, the constitutional requirements of notice and opportunity for hearing before the writ of restitution shall issue, and which are absent from the provisions of sec. 9140 as thus amended.

Under the statute, sec. 9140 and the amendatory act of 1939, the application is for the *writ* and not for an *order*, but, in practice, of course, it is customary for the attorney for the applicant to present and request an order in writing that the writ issue. The *order* is merely incidental, under the language of the statute; however, for the moment, we will consider the application to be for an *order* in writing within the meaning of

sec. 8909, and hence, that the application is a motion. We must now resort to said rule X relating to notice of motion in order to ascertain whether it assures constitutional notice as to motions or applications of the class provided for by sec. 9140. Rule X is, in part, as follows:

"Rule X

"Motions. Motions in all cases, except ex parte motions, motions for continuance, and motions to amend pleadings pending a trial, shall be noticed at least five days before the day specified for a hearing.  *  *  *."

It is thus clear that ex parte motions are within the classes of motions excepted from the requirement of notice under rule X.

■ Ex parte motions, that is, motions without notice, are of various kinds and are frequently and commonly permitted under the Nevada law and practice. They are frequently permissible in procedural matters, and also in situations and under circumstances of emergency, as in the case of an application for an injunction to prevent irreparable injury which would result from delay, and where there is no plain, speedy and adequate remedy at law.

Chapter 65, N.C.L. 1929, vol. 4 relating to forcible entry and detainer and unlawful detainer, contains, in several respects, provisions of a summary character. As pointed out by petitioner in his reply to the petition for rehearing, the original sec. 9140 itself to which the controverted amendatory provision of 1939 for writ of restitution is appended, provides for a shortening of the time within which the defendant must appear and defend. In case of constructive service, publication for as short a period as one week is permissible; and, in case of personal service, as stated by petitioner, the provisions of the act "permit the court to require the defendant to appear and defend within one or two days, and it is common practice for the courts of this state to shorten the time to such periods. The legislative intent

to be gathered from the foregoing is inescapable. The defendant may be dealt with summarily."

Considering the nature of the act, we believe the legislature, by the said statute of 1939 amending sec. 9140, intended that the provisions of said amendatory act·should partake of the same summary character as the original act. The objective was to afford landlords the means of speedy and summary dispossession of tenants. The omission of all provision for notice and hearing was, we are convinced. intentional on the part of the legislature, in moulding, as they conceived, the amendatory act into the general pattern of the original.

The provision of the said amendatory act of 1939 that "at any time after the filing of complaint and issuance of summons, upon application therefor, the court may issue a temporary writ of restitution," and particularly, the words "upon application," clearly manifest the legislative intention that, upon the application being made to the court, the writ may issue forthwith, or immediately thereafter.

Obviously, no notice was contemplated or intended by the legislature, and the application or motion is ex parte. Consequently, the attempt to imply the notice provision of district court rule X, in connection with the last sentence of sec. 9140 as thus amended in 1939, must fail, as the application or motion, being ex parte, is excepted by the terms of rule X from the requirement of notice.

Indeed, in practice throughout this state, so far as we are able to ascertain, it appears that the courts and the legal profession generally have considered the application to be ex parte, and while that fact is not necessarily controlling in the instant case, it is persuasive.

Section 8909, together with rule X, cannot, therefore, be deemed to furnish, in the instant situation, the means of assuring to the defendant the notice and opportunity to be heard and to defend before being deprived of his property, which is essential to due process.

Section 8921 N.C.L.1929 is unavailing to supply the absent requirement of notice in said sec. 9140, N.C.L. 1929, as amended, for the reason that the former applies only after the appearance of the defendant, and then only requires notice of subsequent proceedings *of which notice is required to be given.*

Under the objectionable provision of sec. 9140, as amended in 1939, irreparable damage would in many cases be inflicted by the summary dispossession, without notice, *before appearance;* and even in cases where the writ of restitution was issued and the summary dispossession occurred *after appearance,* the words "of which notice is *required* to be given" would preclude the effective operation of said sec. 8921 as to an ex parte motion, for the reason that the said words, together with the necessary implication, mean "of which notice is required to be given, *by the provisions of the Civil Practice Act of the State of Nevada, of which said section 8921 is a part";* and, as we have hereinbefore stated, ex parte motions are excepted from such requirement by district court rule X. (Emphasis ours.)

But it may be argued, why is it necessary to hold that the application for the writ of restitution, or the motion for the order for its issuance, is ex parte, when the sentence in question in section 9140, as amended in 1939, does not expressly dispense with notice? Why not leave the character of the application or motion an open question, and apply the doctrine applied by some very respectable authorities to the effect that "a requirement of notice is to be implied from the very fact that it is a constitutional requirement, irrespective of particular provisions in the statute under which the proceeding is had?"

In 12 Corpus Juris, page 1229; 16 C.J.S., Constitutional Law, sec. 619, p. 1255, it is stated: "But a statute will not be held unconstitutional for failure expressly to provide for notice, if the requirement of notice may be fairly implied from a consideration of all its provisions,

and according to some authorities a requirement of notice is to be implied from the very fact that it is a constitutional requirement, irrespective of particular provisions in the statute under which the proceeding is had. Under this view the statute is not unconstitutional unless it undertakes to dispense with notice. Other cases, however, hold that the statute itself must specifically require notice, as otherwise it authorizes proceedings without notice and is, therefore, unconstitutional."

In support of the view that the constitutional requirement of notice should be deemed implied, unless the statute dispenses with notice, cases are cited from a number of states by the respondents.

■ Our answer to the question as to why we do not apply that rule or doctrine is that we believe the other view, namely, "that the statute itself must specifically require notice, as otherwise it authorizes proceedings without notice and is therefore, unconstitutional" (12 C.J. 1229; 16 C.J.S., Constitutional Law, sec. 619, p. 1255), is the sounder and the better view.

Among the states adhering to the doctrine which we approve, and will apply in the instant case, are: California, Delaware, Oklahoma, Michigan, Wyoming, and Washington.

■ The proceeding in unlawful detainer, provided for in chap. 65, N.C.L.1929, vol. 4, is a statutory proceeding and remedy, unknown to the common law. This court so stated in Yori v. Phenix, 38 Nev. 277, 281, 149 P. 180, 181 (cited by petitioner) as follows: "What is known as an action in unlawful detainer, designed to afford to a landlord a summary remedy for the recovery of demised premises, was unknown to the common law."

■ As before indicated, it is, we believe, the very general view of the courts and the legal profession in this state, that in determining the requirements of statutes providing summary procedures and remedies, one need take into consideration only the provisions of the statute itself, and, of course, the provisions of any act amending

it, but not those of general procedural acts. The statute, as to procedure under it, is presumably exclusive and complete. This construction simplifies and renders more certain, consistent and uniform the administration of the law, and we believe is more conducive to equal justice than would be the adoption of the other view. In the instant case, the respondents, represented by able counsel, proceeded and had the writ of restitution issued and were about to dispossess petitioner, all without notice or a hearing, obviously for the reason, as they correctly understood, that the statute sec. 9140, as amended in 1939 by adding the sentence in question, did not so require. This is a fair illustration of how the attorneys and courts of Nevada very generally have construed that and other statutes providing summary remedies.

Should we follow the other view, and attempt, by ingenious reasoning, to make applicable certain provisions of the civil practice act in order to satisfy the constitutional requirement of notice and the opportunity to be heard, we would not only, we believe, be construing sec. 9140, as amended in 1939, contrary to the intention of the legislature, but also would be establishing the cause for much future confusion and uncertainty in the enforcement and application of the statute, which, we believe, would inevitably lead to and result in discrimination and injustice.

We will now refer to, and quote from some of the cases expressing the doctrine which we approve. (These cases are among those cited in petitioner's reply to the petition for rehearing.)

In People v. Broad, 216 Cal. 1, 12 P.2d 941, certiorari denied 287 U.S. 661, 53 S.Ct. 220, 77 L.Ed. 570, the supreme court of California has stated [216 Cal. 1. 12 P.2d 944] : "According to some authorities; a requirement of notice is to be implied from the fact that it is a constitutional requirement, irrespective of the particular provisions of the statute under which the proceeding is had; and, according to this view, a statute is not

unconstitutional unless it undertakes to dispense with notice. 12 Cor.Jur.Constitutional Law, sec. 1006, p. 1229, and cases cited. But in this jurisdiction the cases have established the rule that to constitute due process the statute must itself provide for notice   *   *   *."

And in another California case, Moffat Co. v. Hecke, 68 Cal.App. 35, 228 P. 546, the rule is more fully stated as follows: "One who is in the possession of property under a claim of right cannot be deprived of its possession without due process of law. To constitute due process the statute itself must provide for notice of a time and place of hearing, giving to the parties an opportunity to present in a deliberate, regular and orderly manner issues of fact and law. It is essential to the validity of a statute that it furnish the means whereby one may enforce his constitutional rights   *   *   *.   The law itself must provide for notice and give a right of hearing. Lacey v. Lemmons, 22 N.M. 54, 159 P. 949, L.R.A. 1917A, 1185."

In Delaware, in the case Spoturno v. Woods, Del.Sup., 192 A. 689, 694, it was stated: "Due process of law, as applied to notice of proceedings under a statute resulting in judgment, means notice directed by the statute itself, and not a voluntary or gratuitous notice resting in favor or discretion; and the statutory provisions must not leave open clear opportunities for a commission of fraud or injustice   *   *   *."

The Oklahoma supreme court in Board of Education v. Aldredge, 13 Okl. 205, 73 P. 1104, 1105, expressed itself as to the rule thus: "After a careful examination of all the authorities at our command, we are clearly of the opinion that the statute must stand or fall as enacted by the Legislature, and that, where no notice is provided, a court ought not to say that notice is implied; and, as has been said by other law writers, the question is, not what was done, but what did the statute authorize to be done."

In the Michigan case, Rassner v. Federal Collateral

124

Soc., 299 Mich. 206, 300 N. W. 45, 49, the court indicated concern, as we have done herein, as to possible lack of uniformity in the lower courts' application of the provisions for notice and hearing, were the other rule followed. That court said:

"The statute cannot be upheld by assuming that the (lower) courts would uniformly provide the procedure for giving adequate notice and opportunity for hearing. The statute must stand as enacted and we cannot assume that the legislature intended the courts to add necessary saving provisions. * * *

"Authorities might be multiplied holding generally that unless a statute in itself provides for the giving of notice and an opportunity for hearing before property or the possession thereof can be taken, it violates the constitutional inhibition against taking property without due process of law. For a general collection of such authorities, see 12 C.J. pp. 1228, 1234 (16 C.J.S., Const. Law, sec. 619) ; 12 Am.Jur. p. 358."

The supreme court of the State of Wyoming, in the case of Sterritt v. Young, 14 Wyo. 146, 82 P. 946, 949, 4 L.R.A.,N.S., 169, 116 Am.St.Rep. 994, succinctly stated its position as follows: "We are of the opinion that the better reasoning is that the statute must provide for notice, and that, where none is provided, it should not be implied by the court."

The uncertainty, confusion, and, in consequence thereof, the inconsistency, discrimination and injustice that would inevitably ensue if the rule that the court (or administrative officer) will read into the act the constitutional requirement of notice, were followed, is well indicated by the supreme court of Washington in Northern Cedar Co. v. French, 131 Wash. 394, 230 P. 837, 843. In that case the court stated: "It is further argued that since the state and national Constitutions demand that property may not be taken without notice, and that such is the settled law, the courts will assume that the Legislature intended that notice should be

given, unless its act expressly or by necessary inference demands the contrary conclusion, and that, since there is nothing of that character in this act, we will read into it a notice requirement, or will assume that the director of agriculture will comply with the general law, and give an opportunity for a hearing. An argument which in theory is just as plausible, and in practice more so, is that, since everybody knows that a legislative act is presumed to be constitutional until the courts declare the contrary the director of agriculture will do the natural thing, and follow the authority given him by the legislative act, and annul licenses without notice."

■ The greatest deficiency in our statute sec. 9140, as amended by the said act of 1939, is the absence of any provision for notice to the defendant, and for a hearing, and that such hearing shall be so conducted as to afford him the opportunity to present, in a regular and orderly manner, issues of fact and law.

Such a provision in the statute itself, in our opinion, is a fundamental requirement of due process.

The absence from the statute of such a provision, also renders the provision therein for a bond of "not less than $500.00 to indemnify the party or parties against whom the temporary writ may be issued" of little value, for the reason that, upon such an ex parte application, the court has practically no opportunity to ascertain the facts sufficiently to enable it accurately to estimate the probable loss to the defendant, should it thereafter be established that the issuance of the writ and the dispossession of the defendant were wrongful.

In other words, under such ex parte procedure, the court lacks the necessary opportunity for sufficient knowledge of the facts to enable it intelligently to determine the amount in which the bond should be fixed in order to assure its adequacy.

The action taken in the instant case, in which the bond was only $5,000, and the probable loss to the defendant from summary dispossession alleged to be

$25,000, furnishes a vivid illustration of the great, and probably irreparable damage that the petitioner would have suffered had not this court responded to the prayer of petitioner for the alternative writ of prohibition. The determination of the amount of the bond should not be until the time of the hearing.

■. It is our firm conviction that a provision for notice for such time as will assure the defendant a reasonably sufficient opportunity to be prepared for hearing, and a further provision assuring an orderly, fair and impartial hearing, and if it appears at such hearing that the writ shall issue, requiring that the applicant for the writ shall furnish an adequate bond, the amount of which shall be fixed by the court in the light of the facts elicited at such hearing, and shall be sufficient to save the defendant harmless in the event the landlord should finally be found not entitled to the writ, constitute the minimum essentials of due process in such a proceeding.

■ We do not believe to be constitutional any procedure so speedy, summary and drastic as to enable a landlord to dispossess a tenant without first showing, by competent, relevant and material evidence, at a hearing, judicially, fairly and impartially conducted, the existence of sufficient facts to establish, at least prima facie, the clear right to the immediate possession of the property involved. The district court, in ordering the issuance of the writ of restitution in the instant case (as we stated in our original opinion herein) lacked jurisdiction and exceeded its jurisdiction because the last sentence of amended sec. 9140, N.C.L.1929, Stats. of Nevada 1939, chap. 135, pp. 171, 172, 2 N.C.L.Supp. 1931–1941, p. 1232, is unconstitutional in that it violates the provisions of the due process clauses of the state and federal constitutions.

Perceiving no error in our original decision in the instant case, the same, including the order of this court permanently restraining the respondents from any further proceedings under such statutory provision, will·

stand, and said restraining order will continue in full force and effect.

EATHER, C. J., concurs.

TABER, J., participated in the consideration of said case and in the preparation of the foregoing opinion, but died shortly before same was completed.