**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**JAIME ST. OMER, Defendant**

Case No. SX-11-CR-810
Superior Court of the Virgin Islands
Division of St. Croix
January 3, 2012

VINCENT F. FRAZIER, ESQ., Attorney General, WARREN T. SEDAR, ESQ., Special Assistant Attorney General, U.S. Virgin Islands Department of Justice, Christiansted, USVI, *Attorneys for the People*.

JOMO MEADE, ESQ., Frederiksted, USVI, *Attorney for Defendant*.

DONOHUE, *Presiding Judge*

## MEMORANDUM OPINION

(January 3, 2012)

**BEFORE THE COURT** is an "Ex Parte Motion for Certification of Material Witness and Request that Said Motion be Placed Under Seal," filed by the People of the Virgin Islands. As the People moved ex parte, Defendant Jaime St. Omer was not notified and therefore did not submit a response. For the reasons stated below, the Court will deny the People's Motion without prejudice.

### I. BACKGROUND

On February 24 2007, Larry Rodriguez died as a result of multiple gunshot wounds. (*See generally* Information, filed Nov. 15, 2011.) Shortly

thereafter, Jaime St. Omer was arrested and charged with Rodriguez's murder. Jury selection and trial are slated to commence on Monday, January 9, 2012. (Order, entered Dec. 2, 2011.) In advance of trial, the People moved ex parte for certification of a material witness ("M.W.")[1] for interstate rendition, pursuant to Section 3863 of Title 5 of the Virgin Islands Code. (*See generally* Ex Parte Mot. for Cert, of Material Wit. and Req. that Said Mot. be Placed Under Seal, filed Dec. 23, 2011 (hereinafter "Ex Parte Mot.")) In support, the People submitted an affidavit from the prosecuting attorney. (*See generally id.* at Attach. (Warren T. Sedar Aff., dated Dec. 23, 2011.) (hereinafter "Sedar Aff.").) The People also submitted a copy of the statement M.W. provided the Virgin Islands Police Department in February 2007. (*See generally id.* at Ex. A (Stmt. Narrative, dated Feb. 26, 2007) (hereinafter "Stmt.").)

In their Ex Parte Motion, the People state that M.W. "left the Virgin Islands and resides in Miami, Florida. . . . [and] was a witness to a homicide that took place on the Island of St. Croix in the United States Virgin Islands on February 24, 2009." (Ex Parte Mot. 1.) The People also state that M.W. "is a material witness and critical . . . to prov[ing] the [g]uilt of the Defendant beyond a reasonable doubt." *Id.* In the Affidavit, the prosecuting attorney states that M.W. "is a witness [who] . . . can offer eye witness evidence to support the fact that the Defendant . . . shot and killed Larry Rodriguez." (Sedar Aff. ¶3.) Without M.W.'s testimony, the People "will not be able to sustain its burden of proof." *Id.* ¶5. Further elucidation of M.W.'s testimony was not provided.[2] Rather, the People submitted M.W.'s statement. In that statement, M.W. informed the police that she was home in her apartment on the evening of February 24, 2007. (Stmt. 1.) She heard a heated argument outside her apartment. *Id.* "[A] male voice said 'Give me your money, don't try and run.' " *Id.* at 2. M.W. "then heard three shots fired off back to back. After hearing the shots [M.W.] took [her] baby from the bedroom that face[d] the road . . . . [They] stayed in the back bedroom until [she] heard a car drive off."

---

[1] As the People requested that their prospective witness's identity remain undisclosed until trial, the Court will employ "M.W." throughout to refer to the prospective "material witness."

[2] Remaining paragraphs of the Affidavit note the attorney's capacity herein, the date of trial, and M.W.'s current address. (Sedar Aff. ¶ 1-2, 5.) In the final paragraph, the prosecuting attorney explained that M.W.'s "whereabouts have only been discovered after an extensive search." *Id.* ¶ 6.

*Id.* M.W. then looked out her living room window but "did not see anything in front . . . ." *Id.* To the right, however, she "saw a Bronco in a stopped position, and [then] heard a woman across the street cursing." *Id.* M.W. "went outside onto the sidewalk . . . look[ed] inside the vehicle and . . . saw the person slumped back in the seat with his mouth open." *Id.* M.W. informed the police she did not recognize the male voice she heard earlier. *Id.* She also could not identify the perpetrator or the victim. *Id.* at 2-3.

## II. SECURING ATTENDANCE OF OUT-OF-STATE WITNESSES

■ Forty-nine States, the District of Columbia, and the Virgin Islands have enacted the "Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings." *See generally* V.I. CODE ANN. tit. 5, §§ 3861-3865 (1997) (hereinafter "Attendance of Witnesses Act"). The Virgin Islands enacted our version of the Attendance of Witnesses Act in 1957 in tandem with our adoption of a comprehensive code for the Territory. To date, no Virgin Islands court has addressed the Act's substantive requirements.[3] Thus, the Court lacks any Virgin Islands precedent, whether binding or persuasive, to inform its analysis here. In general, where local law is absent, Virgin Islands courts look to "the common law, as expressed in the restatements of the law . . . and to the extent not so expressed, as generally understood and applied in the United States . . . ." V.I. CODE ANN. tit. 1, § 4 (1995). Mere, however, the law at issue is statutory. What's more, the Attendance of Witnesses Act does not derive from the common law, but rather from the efforts of the National Conference of Commissioners on Uniform State Laws working for legal uniformity throughout the country. Accordingly, in interpreting a Virgin Islands statute in the absence of Virgin Islands case law, the Court finds it proper to consult secondary sources as persuasive authority, particularly where those sources have synthesized judicial interpretations of similar

---

[3] Two Virgin Islands decisions referenced the Attendance of Witnesses Act. *See, e.g., Gov't of the V.I. v. Aquino*, 378 F.2d 540, 6 V.I. 395 (3d Cir. 1967); *People of the VI. v. Steinhauer*, No. ST-10-CR-240, 2010 V.I. LEXIS 81 (V.I. Super. Ct. Nov. 23, 2010). Neither addressed the Act's substantive requirements, however. *Aquino* referred to the Act in *dicta* in support of the general "recognition of both the power and the desirability of requiring a witness to come from one state to another to testify in a criminal proceeding." *Aquino*, 378 F.2d at 551. Similarly, *Steinhauer* addressed "the issue of whether courts may issue a subpoena duces tecum pursuant to th[e Attendance of Witnesses] Act." *Steinhauer*, 2010 V.I. LEXIS 81, at *5.

legislation from other jurisdictions. *Cf. In re Le Blanc*, 49 V.I. 508, 523 (2008) ("statutes with similar language and purpose are construed alike.").

■ In general, the Attendance of Witnesses Act seeks to "promote the enforcement of the criminal laws and the administration of justice in criminal proceedings . . . by enabling the courts of one [jurisdiction], through the voluntary cooperation of the courts of another [jurisdiction] . . . to secure the attendance of witnesses from such other [jurisdiction] to give testimony . . . ." 81 AM. JUR. 2D *Witnesses* § 35 (2004). It "permits a judge . . . in one jurisdiction to certify that in a prosecution pending before the court a material witness will be required for a specified number of days, . . ." *Gov't of the V.I. v. Aquino*, 378 F.2d 540, 550, 6 V.I. 395 (3d Cir. 1967). Before the Superior Court may certify to a court in another jurisdiction the need for an individual in that jurisdiction to testify here in the Virgin Islands, three factors must be present: (1) criminal prosecution, (2) reciprocal authority, and (3) witness materiality. *See generally* V.I. CODE ANN. tit. 5, § 3863 (1997). Each factor will be discussed below.

Criminal prosecution or proceeding is the first factor that must be present. The Attendance of Witnesses Act applies only to those "person[s] whose testimony is desired in . . . a Criminal Action, Prosecution or Proceeding." *Id.* § 3861. Here, the Court takes judicial notice that this matter is a criminal prosecution. Moreover, the People requested that M.W. be brought to the Territory to testify in St. Omer's upcoming trial. Accordingly, the Court finds that the first factor is present here.

■ Reciprocity is the second factor that must be present. The Attendance of Witnesses Act functions through principles of comity. 81 AM. JUR. 2D *Witnesses* § 40 (2004). Therefore, Virgin Islands courts may issue certification only if the jurisdiction in which the witness is presently located has "by its laws has made provision for commanding persons within its borders to attend and testify" outside that jurisdiction. V.I. CODE ANN. tit. 5, § 3863 (1997). Here, the People stated that M.W. resides presently in Miami, Florida. While the People failed to reference whether Florida has adopted the Attendance of Witnesses Act, the Court again takes judicial notice that it has. *See generally* FLA. STAT. ANN. §§ 942.01-942.06 (West 2011). *Accord* Unif. Act to Secure the Attendance of Witnesses from Without a State in Crim. Proc, 11 U.L.A. 1-2 (2003) (listing jurisdictions adopting the Act). Accordingly, as the State of

Florida has made provision for commanding persons within its borders to attend and testify outside its borders, the Court finds that the second factor is also present here.

 Materiality is the third factor that must be present. The Attendance of Witnesses Act applies only where the testimony of a "material witness" is shown. V.I. CODE ANN. tit. 5, § 3863 (1997). Materiality requires "a prima facie showing . . . ." 81 AM. JUR. 2D *Witnesses* § 45 (2004). The movant bears the burden of showing "enough facts to enable both the court of the requesting [jurisdiction] and the court in the [jurisdiction] to which the requisition is directed to determine whether the witness should be summoned and compelled to travel . . . ." *Id.* § 39. The Attendance of Witnesses Act "contemplates two findings that a witness is material . . . one by the judge of the [jurisdiction] in which the proceeding is pending . . . and one by the judge of the [jurisdiction] where the prospective witness is located." *Id.* § 43. In determining materiality, courts consider

> the specific forms and nature of evidence that may be adduced to prove that a witness is material. In a number of jurisdictions it is has been held that an affidavit of a defendant or of a district attorney or other prosecutorial official that a witness is material is not sufficient to support a finding of materiality. Some courts have considered the admissibility of the testimony of the prospective witness, ruling that if h[er] testimony was hearsay or otherwise incompetent or irrelevant, [s]he was not a material witness.

Jay M. Zitter, Annotation, *Sufficiency of Evidence to Support or Require Finding that Out-of-State Witness in Criminal Case is "Material Witness" Justifying Certificate to Secure Attendance Under Uniform Act to Secure Attendance of Witnesses from Without a State in Criminal Proceedings*, 12 A.L.R. 4th 742, 746 (1982) (internal citations omitted). Determination of materiality ultimately "rests within the judge's sound discretion." 81 AM. JUR. 2D *Witnesses* § 43 (2004). Here, to show materiality, the People submitted a motion, an affidavit of the prosecuting attorney, and the statement M.W. provided the police. As noted, some courts have found attorney affidavits sufficient to show materiality. However, the Court need not resolve that question at this time because the People failed to show materiality as discussed below.

██ ██ In their Motion, the People stated that M.W. was a material witness. (Ex Parte Mot. 1 ("The People have *a material witness . . . .*") (emphasis added).) Whether M.W. is, in fact, a material witness, however, is what this proceeding must determine. Materiality must be shown, not stated. Here, the People merely state that M.W. "was a witness to a homicide that took place . . . on February 24, 2009." *Id.* at 1. Presumably, the People meant the homicide at issue herein, though they failed to make that explicit.[4] That notwithstanding, the People did not discuss what M.W. witnessed or explain how her testimony would help establish any element of the offenses charged, or even comment on how her testimony might assist the trier of fact in determining St. Omer's guilt or innocence. Thus, the Court cannot find that the People showed materiality through their Motion.

Materiality also cannot be found from the prosecuting attorney's affidavit. In the Affidavit, the prosecutor states that M.W. "is a witness . . . that can offer *eye witness evidence* to support the fact that the Defendant . . . shot and killed Larry Rodriguez. (Sedar Aff. ¶ 3 (emphasis added).) The prosecutor then concludes that "without the testimony of [M.W.] the People of the Virgin Islands will not be able to sustain [their] burden of proof." *Id.* ¶ 4. Here, the People, through their attorney's affidavit, simply labeled M.W. as an "eye witness." But as with their Motion, however, the People failed to discuss what M.W.'s expected "eye witness" testimony would be or show how it would be material. Thus, the Court cannot find that the People showed materiality through the prosecuting attorney's Affidavit.

██ Lastly, materiality cannot be found through M.W.'s police statement. In particular, M.W.'s statement actually contradicts the People's categorizations of her testimony. According to her statement, M.W. was inside her apartment on the night in question when she heard arguing outside, She did not look to see who was arguing. She heard gunshots and removed herself and her child to a back bedroom where she stayed until she heard a car drive off. M.W. informed the police that said she did not "have any idea who did the shooting" nor did she "know the name of the person who was shot." (Stmt. 3.) Thus, M.W.'s

---

[4] The offense at issue here occurred two years prior, on February 24, 2007. (*See* Information I.) The Court notes, however, that the date discrepancy in the People's motion may have resulted from an inadvertent typographical error.

own statement contradicts the People's categorizations of her as "*a witness* to a homicide" who could offer "*eye witness* evidence." "[M]ere allegation of the materiality of the out-of-state witness, made by either the prosecution or the defense, *does not afford a sufficient basis* for the determination that the testimony of the witness is material." 81 AM. JUR. 2D *Witnesses* § 45 (2004) (emphasis added). Thus, the Court cannot find that the People showed materiality through M.W.'s police statement.

Based on the discussion above, the Court finds that the People have established the first two factors required by the Attendance of Witnesses Act. Upon review of the People's Motion and accompanying documents, however, the Court cannot find that the People established the third factor: witness materiality. Accordingly, in an accompanying order, the People's Ex Parte Motion for Certification of Material Witness will be denied without prejudice.

### III. EX PARTE MOTIONS

In moving for certification pursuant to the Attendance of Witnesses Act, the People filed the instant Motion ex parte. In support, People explained that "[a]llowing the People to present the Motion . . . ex parte and under seal allows the protections afforded by the Jenke's [sic] Act to be realized." (Ex Parte Mot. 2.) For the reasons stated below, the Court finds the People improperly moved ex parte here.

■ "The law looks with disfavor on ex parte court action without notice, except where irreparable harm would result to the applicant before notice can be served." 60 C.J.S. *Motions and Orders* § 14 (2002). "[N]otice must be given where required by a statute or court rule and notice may be required even in the silence of the statutes as to notice. This rule should also be observed in criminal proceedings to insure [sic] fundamental fairness and a fully informed court." *Id.* In some instances, however, ex parte motions may be proper or even necessary. Ex parte motions "are frequently permissible in procedural matters, and also in situations and under circumstances of emergency . . . ." *Farnow v. Dept. J of Eighth Jud. Dist. Ct. in and for Clark Cry*, 64 Nev. 109, 178 P.2d 371, 375 (Nev. 1947). In criminal actions, for example, appointed counsels often move ex parte for payment, a routine procedural matter. In domestic violence actions, for example. Virgin Islands law allows for emergency relief on an ex parte basis by statute. *See* V.I. CODE ANN. tit. 16, § 98 (1996). Similarly, in civil actions generally, courts may grant a temporary

restraining order via an ex parte motion. *See, e.g.*, FED. R. CIV. P. 65(b). *Cf.* FED. R. CIV. P. 5(a)(1)(D). In non-routine matters, however, the movant must first demonstrate the irreparable harm that would result if the opposing party were notified before the court granted the requested relief. FED. R. CIV. P. 65(b)(1); V.I. CODE ANN tit. 16, § 98(b) (1996). Here, the People moved ex parte, explaining that "[t]he Jenke's [sic] Act specifically allows the People to withhold the names of witnesses and witness statements until trial. Allowing the People to present the Motion . . . ex parte and under seal allows the protections afforded by the Jenke's [sic] Act . . . ." (Ex Parte Mot. 2.) But the People conflate two separate issues: notice and confidentiality. Each could have been satisfied without resort to ex parte action.

The Attendance of Witnesses Act docs not address whether notice to opposing counsel is required. At least one court, however, has held that the Attendance of Witnesses act requires notice and an opportunity to appear. *Emrick v. Connarn*, 128 Vt. 202, 260 A.2d 380 (Vt. 1969). In *Emrick*, a Vermont trial court permitted the prosecution to put on testimony regarding the immateriality of the defendant's requested out-of-state witness. *Id.* at 382. An earlier misunderstanding ad caused the defense attorney to believe that his out-of-state witness request was granted. *Id.* at 381. Accordingly, he thought a court appearance was to discuss the procedure for securing that out-of-state witness. *Id.* at 381-82. Upon arrival, however, the defense attorney learned that the court had scheduled a hearing on his out-of-state witness request. *Id.* The defense attorney objected based on lack of notice and the defendant's absence from the proceeding. *Id.* at 382. The court proceeded with the hearing over those objections. *Id.* On appeal, the Vermont Supreme Court declaring the hearing invalid because of insufficient notice and the defendant's absence from the hearing. *Id.* at 383. The court remanded with "directions that further proceedings be held in order to afford the [defendant] an opportunity to be heard on the issue of whether the California witness should be compelled to attend the trial." *Id.* In invalidating the trial court's hearing, the Vermont Supreme Court reiterated that "[f]ailure to afford adequate notice and an opportunity to be heard violates the very essence of the meaning of due process of law." *Id.*

 ██ The Court finds *Emrick* persuasive here. Absent exigent circumstances or a showing of irreparable harm, motions brought under the Attendance of Witnesses Act should not be brought ex parte. Mere, the

only explanation the People offered was protection of their witness's identity under the Jencks Act. But the People failed to explain what harm, if any, notice to St. Omer would have caused or how redaction would not have sufficed. Had the People served a redacted copy of their motion on St. Omer, both confidentiality and due process would have been satisfied. Once noticed, St. Omer might have opposed the People's out-of-state witness certification request. He might have joined it. Because the People moved ex parte, what St. Omer's might have done is unknown.

Accordingly, based on the discussion above, the Court finds that the People improperly moved ex parte and thereby denied St. Omer notice and the process due him under the law.

## IV. CONCLUSION

Accordingly, for the reasons state above, the Court will deny without prejudice the People's Ex Parte Motion for Certification of Material Witness for failure to show witness materiality. In addition, the Court finds that the People improperly moved ex parte and thereby denied St. Omer notice. An appropriate order follows.

**DONE AND SO ORDERED** this 3rd day of January, 2012