[No. 1839]

## RHODES MINING COMPANY, RESPONDENT, *v.* BELLE-VILLE PLACER MINING COMPANY, APPELLANT.

1. PRELIMINARY INJUNCTION—DISCRETION OF COURT.
   Under practice act (Stats. 1869, c. 112), sec. 112, authorizing the court to grant a temporary injunction in specified cases, the court may, in its sound discretion, grant a temporary injunction where the rights of the parties under the circumstances may be better protected thereby.

2. PRELIMINARY INJUNCTION—MOTION TO DISSOLVE—DISCRETION OF COURT.
   Where, on motion to dissolve a preliminary injunction in a suit by the holder of the patent to agricultural lands to restrain the removal of tailings produced and alleged to have been impounded on the land by a mining company, and sold under execution against it to the holder of the patent, the affidavits raised a conflict on the issue whether the tailings had been impounded or abandoned by the company, it was not error to refuse to dissolve the injunction, until the doubtful questions of law and fact were determined.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Ormsby County; *F. P. Langan*, Judge.

Action by the Rhodes Mining Company against the Belleville Placer Mining Company. From an order denying a motion to dissolve a preliminary injunction, defendant appeals. **Affirmed.** On petition for rehearing. **Denied.**

The facts sufficiently appear in the opinion.

*Knapp & Cohen, E. G. Knapp*, and *Samuel Platt*, for Appellant:

I. That respondent owns the NE¼ of Sec. 10, T. 4 N., R. 34 E., M. D. B. & M., by virtue of a patent from the State of Nevada, copy of which is attached to the pleading, from which it appears that a reservation is therein made in the following words: "provided, that all mines of gold, silver, copper, lead, cinnabar, and other valuable minerals that may exist in said tract are hereby expressly reserved," and "that the land was originally vacant United States public land, subject to sale by the State of Nevada."

II. That the land is now and always has been agricultural land (except for the mineral contained in the tailings hereinbefore referred to). That these tailings, worth from

$2,000,000 to $2,500,000, were deposited on the land by the Holmes Mining Company and other parties, styled in the bill "The Holmes Mining Company, or its predecessors," and that the plaintiff has become the owner of all the interest that the Holmes Mining Company ever had in said tailings by virtue of certain execution sales under judgments recovered against that company, and that the Holmes Mining Company never abandoned these tailings. The rest of the complaint shows simply that the original defendants and the appellant claim a possessory right based upon a location of the tailings as a placer mining claim under the laws of the United States. The first affidavit of S. A. Knapp states simply the nature and character of the deposit of tailings; secondly, that plaintiff is not the owner of the land unless made so by the patent set out in the complaint; third, that the land is not, and never was, agricultural land; fourth, that the execution sales above referred to were ineffectual to pass any title; fifth, that the appellant is the owner of the land and of the tailings thereon, and of the right to work and mine them for gold and silver.

III.   The land department has recognized this possessory right and permitted entries to be made of lands containing beds of tailings, under the laws applicable to placers. There are no adjudicated cases in the reports of departmental decisions upon this subject which have come under our observation, but we have knowledge of several instances where patents for this class of claims have been issued under the mining laws. (*Rogers* v. *Cooney*, 7 Nev. 213–218; *Ritter* v. *Lynch*, 123 Fed. 931–933;  *Garrard* v. *Silver Peak*, 82 Fed. 578–591; *Jones* v. *Jackson*, 9 Cal. 238–246; *Dougherty* v. *Creary*, 30 Cal. 291; *Dougherty* v. *Creary*, 30 Cal. 481; Blanchard and Week's Leading Cases on Mines, etc., pages 222–3.)   The statutes of Nevada on the subject absolutely preclude obtaining a title to the tailings through the patent pleaded. (Comp. Laws, 282–327.)   These would seem to be a complete answer to plaintiff's contentions if the tailings are land or real property, then they do not belong to plaintiff, but to the Northern Belle Mining Company, and the injunction was erroneous and should be dissolved.

*J. J. Scrivner, S. C. Denson, C. H. Belknap,* for Respondent:

I.    Plaintiff by its complaint is asserting two separate and distinct titles derived from different sources: (1) A title to the land described in the complaint, and (2) a title to the tailings. Plaintiff asserts title to the land described in the complaint under and by virtue of a patent issued to J. J. Scrivner for said land as agricultural land, which even if the land belonged to plaintiff would not, and could not, prevent or deter defendant from locating and working a placer mining claim thereon. (Stats. 1887, p. 102; *Garrard* v. *Silver Peak Mines,* 82 Fed. 578–591.)

II.    Plaintiff asserts title to the tailings described in the complaint under and by virtue of a purchase of the same by plaintiff at a sheriff's sale of same as personal property under an execution issued in the case of the Southern Nevada Gold and Silver Mining Company against the Holmes Mining Company, while the same were upon the lands of plaintiff and not on the lands of the Holmes Mining Company. Therefore, if said tailings were situate upon the lands of plaintiff, which were not mineral but agricultural lands, and the defendant has a right under the laws of Nevada (Stats. 1887, p. 102) to enter upon said agricultural land and work and mine the same for minerals, this agricultural title of plaintiff will not avail it to enjoin the acts of defendant complained of.

III.    It is further shown by the complaint and exhibits attached thereto that defendant has located a placer mining claim upon said tailings and was at the time of the granting of said injunction working said claim. The right to locate a placer mining claim upon tailings is firmly established by the following cases: *Ritter* v. *Lynch,* 123 Fed. 930; *Rogers* v. *Cooney,* 7 Nev. 213; *Jones* v. *Jackson,* 9 Cal. 238; Lindley on Mines, sec. 426; *Garrard* v. *Silver Peak Mines,* 82 Fed. 578; Leading Cases on Mines and Minerals, Blanchard and Weeks, pages 222–223. Land upon which tailings have been deposited may be located as a placer mining claim. (*Rogers* v. *Cooney,* 7 Nev. 213–218; *Ritter* v. *Lynch,* 123 Fed. 930–933.) Tailings deposited on unoccupied nonmineral land of the United States do not belong to the party so depositing said

tailings unless said party by some act clearly manifests his intention to claim and hold possession of the land for the purpose of retaining and impounding said tailings, which fact must be sufficient to impart notice that said land was held for said purpose.

IV.   As we have heretofore stated, we do not deem it necessary to controvert by affidavits or otherwise (although we have done so) the allegations contained in plaintiff's complaint concerning the title to said tailings and the abandonment of same by the Holmes Mining Company, it being sufficient for the purposes of this motion to show that plaintiff has no title which would warrant the granting of the relief prayed for, which we say is apparent from the complaint itself and the authorities hereinbefore cited.   It is respectfully submitted that the motion of defendant should be granted and the injunction heretofore issued should be dissolved.

V.   Our view is that tailings never lose their identity as personal property unless they are allowed to flow where they list and pass beyond the dominion of the producer and while so flowing find a strange and foreign resting-place, thus making an increase to the land and thereby becoming an accretion to the soil.   But the contention that where a miner piles up and impounds his tailings either by natural or artificial means, no difference how high or deep the pile may be, they lose their character as personalty and become an accretion to the soil or body of each upon which they rest, changing the ground beneath them from its natural state of agricultural to mineral land, seems to us a perversion of the word accretion, and too far-fetched to entitle it to a moment's consideration.   To become an accretion the tailings must of their own volition move where they list and pass beyond the dominion of the producer.   In order to lose their natural characteristic of personal property they must become an accretion, which can only occur as before stated.   In other words, tailings deposited in any way by the owner and producer and by his direction and under his control and upon land in his possession, whether public or private, maintain the same characteristics as they possessed when deposited by him, at least until he abandons

them. They were personal property when he deposited them upon the ground, and they must remain so until some other act intervenes which alters their character.

*Knapp & Cohen, E. G. Knapp*, and *Samuel Platt*, for Appellant, in reply:

I. The tailings deposited by the Holmes Mining Company became the property of the Northern Belle Mining Company by accretion. (*Mack* v. *Snell*, 140 N. Y. 193, 35 N. E. 493; *Byrne* v. *McGrath*, 130 Cal. 316–320, and other cases cited in Kerr's notes to the sections of the civil code above cited in Kerr's Annotated Civil Code of California; see title Accretion in 1 Cyc. 222–225; 1 Am. & Eng. Ency. Law, 247–256.)

II. An interlocutory injunction should not be granted when novel questions of law are involved. (High on Injunctions, sec. 4; *Fritz* v. *Erie City P. Ry.*, 155 Pa. St. 472, 26 Atl. 653; *Smith* v. *Reading C. P. Ry.*, 156 Pa. St. 5, 26 Atl. 779; *Conley* v. *Fleming*, 14 Kan. 381.) And it is a fatal objection to granting an injunction for the protection of property pending litigation that the party seeking the relief has no title to or interest in the property, and no claim to the ultimate relief sought by the litigation. (*State* v. *McGlynn*, 20 Cal. 233; *O'Brien* v. *O'Connell*, 7 Hun, 228.)

III. An interlocutory injunction will not be allowed where the right which plaintiff seeks to have protected is in doubt, or where the injury which will result from the invasion of that right is not irreparable. (*Sprigg* v. *Western Telegraph*, 46 Md. 67; *Hagerty* v. *Lee*, 17 Atl. 826; *Amos* v. *Norcross*, 58 N. J. Eq. 256, 43 Atl. 195.)

IV. Nor will parties in possession, whose rights were acquired by purchase at a sheriff's sale from one in peaceable possession, be enjoined from the use and enjoyment of the property by other purchasers, claiming adversely to the first vendor, each purchaser being ignorant at the time of purchase of any title save that of his vendor.

V. The rule that the granting or denying of a preliminary injunction involves such an exercise of judgment upon the part of the chancellor as will not be disturbed upon appeal does not apply to cases involving questions of law arising upon

the face of the bill. (*Burlington, C. R. & N. Y. Co.* v. *Dey*, 82 Iowa, 312, 48 N. W. 98, 12 L. R. A. 436, 31 Am. St. Rep. 477.)

By the Court, TALBOT, J.:

This is an appeal from an order denying defendant's motion to dissolve a preliminary injunction, which had been granted at the time of the commencement of the action. In issuing the injunction, and in refusing the motion for its dissolution, the court considered the complaint and affidavits which were presented by the respective parties.

It is alleged that the plaintiff holds the patent from the State of Nevada to 160 acres of agricultural land, through the application and contract of the plaintiff's grantor; that for many years prior to 1890 the Holmes Mining Company operated mills and mining machinery for the reduction of ores, by which a large amount of tailings were produced and impounded on the land, and that these ever since have remained in place in one body, to the amount of between 400,000 and 500,000 tons, of the value of $5 per ton; that the tailings have never been abandoned, and that they were duly sold by the sheriff to the plaintiff under a writ of execution in the suit of the Southern Nevada Gold and Silver Mining Company against the Holmes Mining Company; that in August, 1904, the original defendants in the present action, who have since conveyed to the Belleville Placer Mining Company, located the ground upon which the tailings were situated as a placer claim, and publicly asserted that the deposit of the tailings converted the ground into mineral land, subject to placer location under the United States mineral laws; that the defendants, claiming a right, title, and interest in the tailings by reason of the placer location, in August, 1904, unlawfully entered upon the land, and proceeded to excavate and remove some of the tailings where the same were impounded by the former owners thereof; that the tailings were not the subject of mineral entry as a placer claim or otherwise; that the land was not mineral land, and that the tailings were and are the private property of the plaintiff, and were the property of the Holmes Mining Company until the title and possession passed by the sheriff's sale to the plaintiff; that the defendants

threatened to continue to trespass upon the land and commit waste by excavating and removing the tailings, to the great and irreparable damage of the plaintiff; that when the tailings are removed, the land itself is practically valueless for any purpose; and that the plaintiff would be irreparably injured by the carrying out of the threats of the defendant, and could not be compensated in damages.

The affidavits which were used upon the hearing of the motion raise a conflict as to a question of fact relating to whether the tailings had been impounded or abandoned by the Holmes Mining Company. Among other contentions, it is claimed on behalf of the defendant that the complaint does not state facts constituting a cause of action or warranting the issuance of an injunction; that under the case of *Rogers* v. *Cooney*, 7 Nev. 213, the tailings mineralized the land, so that it became subject to location as a placer claim, and that under the provisions in the patent reserving the mineral, and giving to others than the patentee the right to prospect and locate mines on the land, and under the decision in *Stanley* v. *Mineral Union*, 26 Nev. 55, the defendant is entitled to hold the tailings under the placer location. The plaintiff relies upon the same cases which are cited by the defendant; and, considering two or three of these for examples, the circumstances were different from those admitted or so far established in the present case. In *Rogers* v. *Cooney* it appeared that the tailings had not been impounded, and had been abandoned by the mill and the owners of the ore by which they had been produced, in distinction of the claim of the plaintiff here that the tailings in controversy were impounded, and not abandoned, and were sold to the plaintiff. In *Ritter* v. *Lynch*, (C. C.) 123 Fed. 931, the tailings were held by the owner, who had retained them in a reservoir against the locator of the placer claim; and, until there is a final determination of the facts, it is not clear whether that case is applicable. In *Stanley* v. *Mineral Union* no question relating to tailings was involved, and the plaintiff admits that under that decision and an agricultural patent issued by the state, such as the one held by the plaintiff, mines may be located and held by prospectors.

It is apparent that important questions of fact and law
which the district judge may well have considered doubtful
are presented, the determination of which, if made now, might
settle the controlling issues in advance of the trial.    It is said
that a temporary restraining order should not be granted
unless it clearly appears that the plaintiff is entitled to it;
but we have adopted heretofore a more liberal rule, and one
under which the rights of the parties, if the circumstances
warrant, in the sound discretion of the court, may be better
protected.    Section 112 of the practice act (Stats. 1869, c. 112)
provides: "An injunction may be granted in the following
cases: First—When it shall appear by the complaint that the
plaintiff is entitled to the relief demanded, and such relief or
any part thereof consists in restraining the commission or con-
tinuance of the act complained of either for a limited period
or perpetually.    Second—When it shall appear by the com-
plaint or affidavit that the commission or continuance of some
act, during the litigation, would produce great or irreparable
injury to the plaintiff.    Third—When it shall appear, during
the litigation, that the defendant is doing, or threatens, or is
about to do, or is procuring or suffering to be done, some act
in violation of the plaintiff's rights respecting the subject of
the action, and tending to render the judgment ineffectual."

In *Marino* v. *Williams*, 30 Nev. 372, we say: "Nevertheless,
it may be said that, under the circumstances, the temporary
injunction to run until the further order of the court was not
improperly granted, and that its dissolution was not errone-
ously refused; if the judge entertained serious doubts regard-
ing the final right of the plaintiff to have a restraining
order.    Courts have often held that an injunction ought not
to be granted unless the applicant shows clearly that he is
entitled to one, but other tribunals take the view that it
depends largely upon a sound discretion and the circumstances,
such as the relative inconvenience and injury that may result
to the parties, and that where there is grave doubt in relation
to the law or the facts, a temporary injunction may be granted,
to prevent great hardship or irreparable damage, until there is
a hearing or determination." (*Harriman* v. *Northern Securities
Co.*, 132 Fed. 464, and cases there cited.)    In the latter case it

was said: "The balance of convenience or hardship ordinarily is a factor of controlling importance in cases of substantial doubt existing at the time of granting or refusing the preliminary injunction. Such doubt may relate either to the facts or to the law of the case, or to both. It may equally attach to, or widely vary in degree as between, the showing of the complainant and that of the defendant, without necessarily being determinative of the propriety of allowing or denying the injunction. Where, for instance, the effect of the injunction would be disastrous to an established and legitimate business through its destruction or interruption in whole or in part, strong and convincing proof of right on the part of the complainant, and of the urgency of his case, is necessary to justify an exercise of the injunctive power. Where, however, the sole object for which an injunction is sought is the preservation of a fund in controversy, or the maintenance of the *status quo*, until the question of right between the parties can be decided on final hearing, the injunction properly may be allowed, although there may be serious doubt of the ultimate success of the complainant. Its allowance in the latter case is a provisional measure of suspensive effect, and in aid of such relief, if any, as may be finally decreed to the complainant. These views are supported by abundant authority, to which, were it not for the importance of the case, I should refrain from adverting.

"In *Russell* v. *Farley*, 105 U. S. 433, 438, 26 L. Ed. 1060, the court, through Mr. Justice Bradley, said: 'It is a settled rule of the court of chancery, in acting on applications for injunction, to regard the comparative injury which would be sustained by the defendant if an injunction were granted, and by the complainant if it were refused. (Kerr on Injunctions, 209, 210.) And if the legal right is doubtful, either in point of law or of fact, the court is always reluctant to take a course which may result in material injury to either party.' In *City of Newton* v. *Levis*, 79 Fed. 715, 25 C. C. A. 161, the circuit court of appeals for the eighth circuit, through Judge Sanborn, said: 'The granting or withholding of a preliminary injunction rests in the sound judicial discretion of the court, and the only question presented by this appeal is whether or not the court below erred in the exercise of that discretion, under the estab-

lished legal principles which should have guided it. The propriety of its action must be considered from the standpoint of that court.  *  *  *  The controlling reason for the existence of the right to issue a preliminary injunction is that the court may thereby prevent such a change of the conditions and relations of persons and property during the litigation as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated. When the questions to be ultimately decided are serious and doubtful, the legal discretion of the judge in granting the writ should be influenced largely by the consideration that the injury to the moving party will be certain, great, and irreparable if the motion is denied, while the inconvenience and loss to the opposing party will be inconsiderable, and may well be indemnified by a proper bond if the injunction is granted.

"A preliminary injunction maintaining the *status quo* may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted.  *  *  *  The arguments and brief of counsel invite us to a consideration of the questions of law which must be finally determined upon a demurrer to the bill, or upon a final hearing of this case after answer. We have, however, found it unnecessary to decide these questions on this appeal, and we express no opinion upon them. They are of sufficient importance and difficulty to demand careful examination and deliberate consideration. In *Glascott* v. *Lang*, 3 Myl. & C. 451, 455, Lord Chancellor Cottenham said: 'In looking through the pleadings and the evidence, for the purpose of an injunction, it is not necessary that the court should find a case which would entitle the plaintiff to relief at all events. It is quite sufficient if the court finds, upon the pleadings and upon the evidence, a case which makes the transaction a proper subject of investigation in a court of equity.' In *Hadden* v. *Dooley*, 74 Fed. 429, 431, 20 C. C. A. 494, the circuit court of appeals for the second circuit, through Judge Shipman, said: 'When the questions

which naturally arise upon the transactions make them a proper subject for deliberate examination, if a stay of proceedings will not result in too great injury to the defendants, it is proper to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined by evidence and proofs which have the merit of accuracy.' "

Under the circumstances, we do not think that it was error to refuse to dissolve the injunction before the time had arrived for finally determining the doubtful and controlling questions involved.

The order of the district court is affirmed.

## ON REHEARING

*PER CURIAM:*

As the within petition raises the questions which were not called to the attention of the lower court and regarding which appellant is not precluded from applying to the lower court for relief and which are not embraced in the specifications of error, and this court is still satisfied with its conclusion regarding the matter determined by its decision, the petition for rehearing is denied.