ROBERT A. MAHEU, INDIVIDUALLY AND DOING BUSINESS AS ROBERT A. MAHEU ASSOCIATES, APPELLANT, *v.* HUGHES TOOL COMPANY, A DELAWARE CORPORATION, RESPONDENT.

No. 6597

ROBERT A. MAHEU, APPELLANT, *v.* CHESTER C. DAVIS, FRANK WILLIAM GAY, AND C. J. COLLIER, JR., RESPONDENTS.

No. 6598

November 16, 1972               503 P.2d 4

[Rehearing denied December 14, 1972]

*Morton R. Galane,* of Las Vegas, for Appellant.

*Davis & Cox,* of New York City, and *Morse, Foley and Wadsworth,* of Las Vegas, for Respondents.

# OPINION

By the Court, ZENOFF, C. J.:

The basic issue of this appeal is an alleged offensive portion of a preliminary injunction directed against Robert A. Maheu who for a long period of time was chief executive of Howard R. Hughes' extensive business operations. The provision with which we are most vitally concerned recites:

"IT IS FURTHER ORDERED that defendants, their respective agents, servants, employees and attorneys, and all persons in active concert and participation with any of them, shall forthwith return or cause the return to *plaintiff* of all books, documents, records and communications of *plaintiff* or pertaining *directly* or *indirectly* to the business operations or affairs of *plaintiff*, including all copies or other reproductions of same, and all other property belonging to *plaintiff*, as may be in the possession, custody or control of defendants *directly* or *indirectly*." (Emphasis added.)

The "plaintiff" is Hughes Tool Company, a Delaware corporation. The preliminary injunction is against Robert A. Maheu, individually, and doing business as Robert A. Maheu Associates.

A series of events took place on December 4 and 5, 1970, which were such as to cause Maheu immediate and deep apprehension in connection with his position and his duties. On December 4, 1970, apparently without prior notice or knowledge, Maheu was notified that the board of directors of Hughes Tool Company had relieved him of all responsibility and authority in connection with its properties. This was confirmed by a letter dated December 5, 1970 from Hughes Tool Company directing Maheu to turn over to its duly authorized representatives the books, records and other property which theretofore had been in the possession, custody or control of Maheu.

Without producing documents or authorization of their authority from Howard R. Hughes, Chester C. Davis, general counsel of Hughes Tool Company, and others, peremptorily took steps to seize the control theretofore exercised by Maheu. Forces unknown to Maheu or the subordinate employees of the various hotels and casinos invaded and took over the

casinos of the Hughes empire and the cashier cages thereof, seized cash and markers, and created understandable concern in Maheu as to his own position and for the gaming licenses under his charge.

Maheu did not accept the termination notice as authentic and proceeded to take defensive action. On December 5, 1970 he commenced an action against Chester C. Davis, general counsel of Hughes Tool Company, Calvin J. Collier, Jr., and Frank William Gay, Vice Presidents and Directors of Hughes Tool Company (Maheu v. Davis, No. 84241 below, No. 6598 on appeal). The gravamen of Maheu's suit against these individuals was that they were wrongfully attempting to wrest from him the properties of Hughes Tool Company, including control over his books and records. On the same day Maheu obtained a temporary restraining order prohibiting further efforts by Davis, Gay and Collier to acquire or exercise control over Hughes Tool Company's properties, including its books and records. He also sought a preliminary injunction to the same effect.

· On December 7, 1970 Maheu caused removal from the Hughes Nevada Operations offices of various files maintained there. On the same day Hughes Tool Company commenced their action (Hughes Tool Co. v. Maheu, No. 84259 below, No. 6597 on appeal) against Maheu and Robert A. Maheu Associates, seeking to enjoin Maheu from exercising, asserting or claiming authority over Hughes Tool Company's properties. A temporary restraining order was issued in this action in the afternoon of December 7, 1970, which was after the removal of the records by Maheu. The two motions for injunctive relief were consolidated for the purpose of evidentiary hearings which were held December 8 through December 18, 1970.

During the course of the hearing for the preliminary injunction testimony brought out the extensive holdings and operations in differing individual and corporate forms of Howard R. Hughes and his accumulations. They pointed up Maheu Associates as being that of an independent consultant, not directly as an employee. During the hearing when the extent of the records and documents that he had removed became subject to contention he tendered for inspection what he represented to be all records he had caused to be removed, but the respondents refused to examine them, or even conduct an inventory of them.[1]

From the hearing it was developed that in the State of Nevada the Hughes Tool Company owned or operated The

---

[1] No satisfactory explanation was given for the refusal.

Sands Hotel and Casino, The Desert Inn, Frontier Hotel, Castaways Casino, Landmark Hotel and Casino, The Silver Slipper Gambling Hall and Saloon, Spring Mountain Ranch, North Las Vegas Airport, fixed based operations at McCarran Field and North Las Vegas Airport, numerous mining claims in 11 counties, rental properties and unimproved real properties in Clark County, KLAS–TV and various bank accounts in five banks in southern Nevada. Separately, yet still part of the holdings under Maheu's direction, there were also Harold's Club of Reno, Sands, Incorporated, and other subsidiaries which own or operate some of the above-listed enterprises within the Howard Hughes umbrella. Howard R. Hughes, the individual, operates the Silver Slipper Gambling Hall and Casino. He also owns all of the outstanding capital stock of Sands, Incorporated.

During the hearing Davis, Gay and Holliday produced a proxy and power of attorney, ostensibly executed by Hughes empowering those three to take over management and control, but which they refused to display to Maheu before the litigation and take-over proceedings were commenced. The lower court granted Hughes Tool Company a preliminary injunction containing the provision heretofore recited and also restraining Maheu from exercising or claiming any authority with respect to Hughes Tool Company property, or to deprive Hughes Tool Company of complete use of its business offices, and other matters.[2]

By separate order the court dissolved the temporary restraining order obtained by Maheu. Maheu appeals from both

[2]The text of the commanding portion of the injunction reads:

"IT IS ORDERED that the defendants, their respective agents, servants, employees and attorneys, and all persons in active concert and participation with any of them, be and they hereby are restrained and enjoined, pending the determination of this action from each and every one of the acts or other conduct specified hereinbelow:

"A.  Exercising or claiming any authority or control with respect to the operations of any of the plaintiff's properties or businesses.

"B.  Entering or occupying any business office, business establishment or other premises (excepting, until further appropriate notice, personal residences presently occupied by any of the defendants) of the plaintiff.

"C.  Depriving plaintiff of the complete possession, use and enjoyment of any and all business offices, business establishments or other premises (excepting, until further appropriate notice, personal residences occupied by defendants or any of them) of the plaintiff.

"D.  Removing from the business offices, business establishments or other premises of the plaintiff in the State of Nevada or elsewhere any books, documents, records or other property of plaintiff in any form.

"E.  Making copies of any such books, documents or records, or

adverse rulings. We consider the recited provision of the injunction the only issue of consequence.

1. We find that the mandatory turnover provision of the preliminary injunction is impermissibly vague and therefore void.

NRCP 65(d) requires in pertinent part that:

"Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; *shall be specific in terms;* shall describe in reasonable detail, and not by reference to the complaint or other document, *the act or acts sought to be restrained. . . .*" (Emphasis added.)

This court said in Webster v. Steinberg, 84 Nev. 426, 442 P.2d 894 (1968), "that a preliminary injunction issued by a trial court of this state is void, not merely voidable, if it fails to describe in reasonable detail the act or acts sought to be restrained." The provision which we now consider lacks definiteness, is vague and ambiguous, because it places the recipient of the order, Maheu, in constant jeopardy if he guesses wrong as to which documents or records relate "directly" or "indirectly" to the business of Hughes Tool Company, compels him to return property of one company to a stranger and allows him no safeguard of keeping what may be rightfully his. Not only may there be books and records of all of the Hughes enterprises, but also communications between Hughes and Maheu relating to personal matters and there are records of

any part thereof, of plaintiff or other communications concerning plaintiff or its sole stockholder and obtained in the course of their employment in behalf of plaintiff.

"F. Making any further disclosure or other use of any books, documents or records of plaintiff or of other information concerning plaintiff or its sole stockholder and obtained in the course of their employment in behalf of plaintiff.

"IT IS FURTHER ORDERED that defendants, their respective agents, servants, employees and attorneys, and all persons in active concert and participation with any of them, shall forthwith return or cause the return to plaintiff of all books, documents, records and communications of plaintiff or pertaining directly or indirectly to the business operations or affairs of plaintiff, including all copies or other reproductions of same, and all other property belonging to plaintiff, as may be in the possession, custody or control of defendants directly or indirectly.

"IT IS FURTHER ORDERED that defendants and each of them forthwith notify their respective agents, servants, employees, attorneys and all persons in active concert and participation with them, including all persons to whom any original or copy of any of the said books, records, documents and communications of plaintiff described hereinabove has been or may have been given or disclosed, of this Order and its provisions."

Maheu's own business efforts of his company known as Maheu Associates that may be unrelated to any of the Hughes operations.

It is not enough to say that Maheu had been with Hughes so long that he knew what was meant by the order. It required "return to plaintiff" all books, etc. "of plaintiff" but the books, documents and records taken may well have been owned in some considerable extent by others than Hughes Tool Company. Thus, under the terms of the injunction, the documents belonging to Sands, Incorporated, or its subsidiaries, do not qualify for a return to Hughes Tool Company and the same must be said of Desert Inn Improvement Company and Hughes Sports Network, Inc. Yet, if they are withheld they nevertheless may relate indirectly to Hughes Tool Company placing Maheu in the position of damned if he doesn't and subject to lawsuits for giving up property not belonging to the plaintiff if he does.

The injunction lacks the specificity that distinguishes the "direct" from the "indirect." Hughes Tool Company's refusal to make any effort to inventory Maheu's proffered return of the books, records and documents supports the conclusion that Maheu should not be subjected to the potential harassment that could come from an uncertain court order.

"An injunctive order is an extraordinary writ subject to contempt for failure to comply and thus must be set out in specific terms." Brumby Metals, Inc. v. Bargen, 275 F.2d 46, 50 (7th Cir. 1960). The turnover provision of this injunction is so uncertain and indefinite as to be impossible of compliance and is therefore void. Webster v. Steinberg, supra; Kress v. Corey, 65 Nev. 1, 20, 189 P.2d 352 (1948); Smith v. District Court, 63 Nev. 249, 257, 167 P.2d 648 (1946).

2.   Other issues raised are inconsequential at this stage. Further, we have reviewed the assignments of error in connection with Appeal No. 6598 and find them to be without merit.

Reversed as to the void turnover provision of the injunction. The remainder of the preliminary injunction will remain in full force and effect.

THOMPSON and GUNDERSON, JJ., concur.

BATJER, J., with whom MOWBRAY, J., joins, concurring in part and dissenting in part:

I agree that the assignments of error in connection with Appeal No. 6598 are without merit and I concur with that part of the majority opinion. I also agree that a portion of the

turnover position of the injunction is too uncertain and indefinite for compliance but I cannot agree that the entire injunction is rendered void thereby.

I would modify the commanding portion of the injunction in the following manner and affirm the injunction as modified:

"IT IS ORDERED that the defendants, their respective agents, servants, employees and attorneys, and all persons in active concert and participation with any of them, be and they hereby are restrained and enjoined, pending the determination of this action from each and every one of the acts or other conduct specified hereinbelow:

"A.  Exercising or claiming any authority or control with respect to the operations of any of the plaintiff's properties or businesses.

"B.  Entering or occupying any business office, business establishment or other premises (excepting, until further appropriate notice, personal residences presently occupied by any of the defendants) of the plaintiff.

"C.  Depriving plaintiff of the complete possession, use and enjoyment of any and all business offices, business establishments or other premises (excepting, until further appropriate notice, personal residences occupied by defendants or any of them) of the plaintiff.

"D.  Removing from the business offices, business establishments or other premises of the plaintiff in the State of Nevada or elsewhere any books, documents, records or other property of plaintiff in any form.

"E.  Making copies of any such books, documents or records, or any part thereof, of plaintiff.

"F.  Making any further disclosure or other use of any books, documents or records of plaintiff.

"IT IS FURTHER ORDERED that defendants, their respective agents, servants, employees and attorneys, and all persons in active concert and participation with any of them, shall forthwith return or cause the return to plaintiff of all books, documents, records and communications of plaintiff including all copies or other reproductions of same, and all other property belonging to plaintiff, as may be in the possession, custody or control of defendants.

"IT IS FURTHER ORDERED that defendants and each of them forthwith notify their respective agents, servants, employees, attorneys and all persons in active concert and participation with them, including all persons to whom any original or copy of any of the said books, records, documents

and communications of plaintiff described hereinabove has been or may have been given or disclosed, of this Order and its provisions." See NRS 2.110; Hansen v. Edwards, 83 Nev. 189, 426 P.2d 792 (1967).