DANGBERG HOLDINGS NEVADA, L.L.C., APPELLANT, *v.* DOUGLAS COUNTY AND ITS BOARD OF COUNTY COMMISSIONERS, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA; STATE OF NEVADA, EX REL., ITS DIVISION OF STATE PARKS; RUSSELL E. WHITE, YVONNE LE MAITRE AND RICHARD D. BRUGA, AS PERSONAL REPRESENTATIVES OF THE ESTATE OF KATRINA D. GLIDE, DECEASED, RESPONDENTS.

No. 30556

DANGBERG HOLDINGS, L.L.C., PETITIONER, *v.* THE NINTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF DOUGLAS, AND THE HONORABLE CARL J. CHRISTENSEN, SENIOR JUDGE, RESPONDENTS, AND RUSSELL E. WHITE, YVONNE LE MAITRE, AND RICHARD D. BRUGA, PERSONAL REPRESENTATIVES OF THE ESTATE OF KATRINA D. GLIDE, AND THE STATE OF NEVADA, EX REL., ITS DIVISION OF STATE PARKS, REAL PARTIES IN INTEREST.

No. 31068

June 7, 1999                                        978 P.2d 311

---

130

[Rehearing denied August 19, 1999]

*Woodburn and Wedge, Gordon H. DePaoli, Suellen Fulstone,* and *Dale E. Ferguson,* Reno; *Brooke & Shaw* and *Charles S. Zumptf,* Minden, for Appellant and Petitioner.

*Terzich & Jackson,* Gardnerville; *Timothy W. Pemberton,* Woodfords, California, for Respondents and Real Parties in Interest Russell E. White, Yvonne Le Maitre, and Richard D. Bruga.

*Scott W. Doyle,* District Attorney, and *Robert T. Morris,* Chief Deputy District Attorney, Douglas County, for Respondents Douglas County and Its Board of County Commissioners.

*Frankie Sue Del Papa,* Attorney General, and *George Taylor,* Deputy Attorney General, Carson City, for Respondent and Real Party in Interest State of Nevada, ex rel., Its Division of State Parks.

## OPINION

*Per Curiam:*

In 1977, the shareholders of a large forty-thousand-acre ranching operation in Northern Nevada sold their interest to several purchasers with the express condition that three granddaughters of the ranch's founder be permitted to use the home ranch as a residence for the rest of their lives. Additionally, the sale agreement provided that upon the death of the last surviving granddaughter, the home ranch and its adjoining ten acres would be offered to Douglas County or alternatively to the State of Nevada for use as a historic museum and park.

The ranch was parceled out during the course of the next fifteen years and sold to various interests. In 1995, Dangberg Holdings, L.L.C. (Dangberg Holdings), purchased a 9900-acre parcel that included the ten-acre home ranch. That same year, the last surviving granddaughter died. In 1996, Douglas County filed an action against Dangberg Holdings for specific performance of the original purchase agreement. In 1997, the State of Nevada and the estate of the last surviving granddaughter ("the Glide Estate")

each filed motions to intervene after learning of settlement negotiations between Dangberg Holdings and Douglas County.

At a hearing shortly thereafter, the district court granted the estate and the State of Nevada's motions to intervene. Additionally, the district court issued a temporary stay to prevent Dangberg Holdings and Douglas County from consummating their settlement agreement.

Dangberg Holdings contends that the district court exceeded its jurisdiction in granting the Glide Estate and the State of Nevada's motions to intervene, and thus it petitions this court for a writ of certiorari directing the district court to vacate its order permitting intervention. Additionally, Dangberg Holdings appeals from the district court's issuance of a preliminary injunction preventing Douglas County and Dangberg Holdings from finalizing their settlement agreement. For the reasons set forth below, we deny Dangberg Holding's petition for a writ of certiorari, and we affirm the order of the district court imposing a preliminary injunction to prevent Douglas County and Dangberg Holdings from consummating their settlement agreement.

## FACTS

In 1977, the H.F. Dangberg Land and Livestock Company (the company) operated a large ranching operation on forty thousand company-owned acres in Northern Nevada and California. In March 1977, the nine shareholders of the company agreed to sell all of their outstanding stock to several purchasers by way of a stock purchase agreement (1977 sale agreement). Included in the group of selling shareholders were three sisters—Ruth Achard (Achard), Margaret McDonald (McDonald), and Katrina Glide (Glide)—who were also the granddaughters of the company's founder, H.F. Dangberg, Sr.

At the time of the agreement, Achard and McDonald resided on a small portion of the ranch property. In recognition of the sellers' intention to condition the sale on all three sisters' right to remain on the premises, the eighth paragraph of the agreement provided:

> It is expressly understood and agreed by the parties that RUTH D. ACHARD and MARGARET D. McDONALD have for many years resided on property of DANGBERG known as the Home Ranch. Said persons are stockholders of DANGBERG and desire to continue to reside on said DANGBERG property. Accordingly, sale of the corporate stock of DANGBERG to the Purchasers is made expressly subject to their continued right to reside on DANGBERG property, and Purchasers expressly agree that they will execute or agree to

> the execution of whatever legal documents may be required to insure such continued right of residence of RUTH D. ACHARD, MARGARET D. McDONALD and their sister, KATRINA D. GLIDE, as expressed in the letter dated March 8, 1977 from FRANK ImMASCHE to LOWELL C. BERNARD, a copy of which is attached hereto and made a part hereof.
>
> In addition to the foregoing, it is expressly understood and agreed by the parties that sale of the corporate stock of DAN-GBERG is made expressly subject to an offer of certain Home Ranch property to the State of Nevada and/or the County of Douglas, for use as an historic ranch site, all as expressed and set forth in the letter dated March 8, 1977 from FRANK ImMASCHE to LOWELL C. BERNARD, a copy of which is attached hereto and made a part hereof.

Additionally, the twelfth paragraph of the agreement provided that "[t]he terms of the agreement shall be binding upon and inure to the benefit of the parties hereto, their heirs, personal representatives, successors and assigns."

On March 8, 1977, shareholder Frank ImMasche drafted a letter to the purchasers apprising them of several conditions on the 1977 sale agreement. ImMasche's letter, which was incorporated by reference into the agreement, indicated that:

> In addition to the condition and requirement . . . providing for the continued right (such right to be documented by a separate agreement with the Purchasers) of Margaret D. McDonald, Ruth D. Achard and Katrina D. Glide, to use the Home Ranch as their residence for as long as they wish during the remainder of their lives, the following amendments, conditions and requirements are added:
>
> . . . .
> When use of the Home Ranch and grounds by [the sisters] is terminated, the complete Home Ranch headquarters area, including the residence and all the structures used in the original ranch operations . . . are to be offered for donation to the State of Nevada and/or County of Douglas for use as an historic ranch site, thereby preserving and making available facilities and equipment of historic interest in the development of American agriculture for future generations to see. . . .
>
> . . . .
> The State of Nevada and/or County of Douglas shall have one (1) year from date of such offer to accept same for the purpose of becoming a part of their park program and, if not

accepted, then and in such event the Purchasers shall be under no further obligation hereunder.

. . . .

After the sale was finalized, two of the principal purchasers—John Anderson and Nevis Industries, Inc.—entered into a long-term lease with the three sisters. Pursuant to the terms of the March 29, 1978, lease, Achard, McDonald, and Glide were entitled to reside in the Dangberg Home Ranch for the remainder of their lives for the nominal consideration of $1.00 per year. Significantly, the ninth paragraph of the lease provided:

> *HISTORICAL PARK OFFER:* Upon the last surviving Lessee having died or upon the abandonment of the premises by all or by the last surviving Lessee, the Lessors do irrevocably agree to offer the "Home Ranch" . . . together with a thirty (30) foot roadway easement from Highway 88 . . . to the State of Nevada and/or Douglas County, . . . for purposes of a historical park. . . . Lessors agree to make such offer and keep said offer open for a period of one (1) year from date of said offer. Thereafter, said offer and any obligation under this paragraph . . . may be withdrawn, terminated or extended at the sole and absolute discretion of Lessor.

The lease was recorded in Douglas County on March 30, 1978. In 1981, John Anderson and Nevis Industries applied for and received approval from Douglas County for a parcel map encompassing the Dangberg Home Ranch as a historical museum.

Over the course of the next fifteen years, the original forty-thousand-acre ranch was parceled out and conveyed to various interests. Although the specific transaction date is not evident, at some point during this period Jack Anderson and Nevis Industries, Inc. conveyed a 9900-acre parcel that included the Dangberg Home Ranch to Robert L. Helms. Helms, in turn, sold this 9900-acre parcel to the Slash Bar H Limited Partnership, and, in September 1995, Slash Bar H Ltd. sold the 9900-acre parcel to Dangberg Holdings, L.L.C.

In July 1995, Katrina Glide, the last surviving sister, died. In October 1995, at the request of the Douglas County Commissioners, J. Stephen Weaver, Chief of Planning and Development for the Nevada Department of Conservation and Natural Resources, wrote a letter to the Douglas County Commission indicating that the State did not intend to pursue the Dangberg Ranch as a state park. However, in the same letter, Weaver indicated that the State felt that the site was worth preserving and that the Division of State Parks "would certainly support any effort that Douglas County may pursue to that end."

In July 1996, within one year of Glide's death, Douglas County filed suit against Dangberg Holdings seeking declaratory relief and specific performance of the 1977 agreement. Douglas County alleged that pursuant to the 1977 agreement, Frank ImMasche's 1977 letter that had been incorporated into the agreement, and the 1978 lease agreement, Dangberg Holdings was obligated to offer the Home Ranch to Douglas County for preservation as a historical museum. A trial date was eventually scheduled for October 20, 1997.

On March 12, 1997, Dangberg Holdings purportedly delivered a written settlement offer to Douglas County that was open for acceptance until March 20, 1997. Pursuant to the terms of the settlement offer, Douglas County would agree to: (1) relinquish the Dangberg Home Ranch as a historical museum site; (2) take possession of all tangible personal property in the Home Ranch that had previously belonged to the Glide Estate; and (3) move such personal property to one of the county's existing museums for display. In return, Dangberg Holdings would agree to make a cash donation of $35,000.00 to the local Douglas County museum to defray the cost of displaying the personal property taken from the Dangberg Home Ranch.

On March 20, 1997, at a regularly scheduled public Douglas County Commission meeting, commissioners discussed Dangberg Holdings' settlement offer and agreed to submit a counter-offer raising Dangberg Holdings' cash donation from $35,000.00 to $50,000.00. There is no evidence indicating that Dangberg Holdings accepted Douglas County's counter-offer.

On April 9, 1997, the Glide Estate filed a motion to intervene in the litigation pending between Dangberg Holdings and Douglas County. In its motion, the Glide Estate claimed that it had an unconditional right to intervene pursuant to NRCP 24(a) and NRCP 19(a) because of its alleged interest in the personal property within the Dangberg Home Ranch. Additionally, on May 6, 1997, the State of Nevada filed its motion to intervene, claiming that it had an unconditional right to intervene to enforce the prior agreements specifying that the Dangberg Home Ranch would be preserved as a historical site.

On April 10, 1997, after learning of settlement negotiations between Douglas County and Dangberg Holdings, the district court ordered Douglas County and Dangberg Holdings to temporarily cease any further work towards finalizing their settlement agreement. Thereafter, the district court set a May 9, 1997, hearing to consider the merits of the Glide Estate's and State of Nevada's motions to intervene.

At the May 9, 1997, hearing, the Glide Estate and the State of Nevada argued that they were entitled to intervene to enforce the

prior agreements specifying that the Home Ranch and tangible personal property therein would be preserved as a historical site. When the district court questioned the State as to whether the 1995 letter from the Nevada Division of State Parks operated as a waiver of the State's rights, the State explained that its decision not to pursue designation of the Dangberg Home Ranch as a state park was conditional and based on its understanding that Douglas County intended to pursue the site as a county museum and park.

After entertaining arguments on the matter, including consideration of Dangberg Holdings' assertion that intervention was improper because Dangberg Holdings and Douglas County had disposed of their litigation by way of a binding settlement agreement, the district court granted the Glide Estate's and State of Nevada's motions to intervene. Following this ruling, the Glide Estate and State of Nevada moved the district court for a preliminary injunction to prevent Douglas County and Dangberg Holdings from finalizing their settlement agreement. After hearing arguments on the matter, the district court ruled:

> THE COURT: So what I want to do is stop everything until you confer and get your pleadings up and proper motions and we see what it is. I can't decide the whole lawsuit here today. All I can decide today is that these parties are allowed to intervene.
> [COUNSEL FOR DANGBERG HOLDINGS]: Okay.
> THE COURT: I'll just increase the stay. I'll enter a stay that any further action on the purported settlement agreement between Dangberg Holdings, LLC, and Douglas County is stayed until further order of the Court. Now, that ought to do it. Then we can sort it out and deal the hands and decide who has the law on their side and who doesn't and what is going to take place.

The district court memorialized its rulings in a written order filed on May 23, 1997.

Dangberg Holdings now petitions this court for a writ of certiorari directing the district court to vacate its order permitting intervention, and appeals from the district court's issuance of a preliminary injunction preventing Douglas County and Dangberg Holdings from consummating their settlement agreement.

## DISCUSSION

*The district court did not exceed its jurisdiction in granting the Glide Estate and the State of Nevada leave to intervene*

A writ of certiorari may be granted where an inferior tribunal, board, or officer exercising judicial functions exceeds its jurisdic-

tion and "there is no appeal, nor, in the judgment of the court, any plain, speedy and adequate remedy." NRS 34.020(2). The writ of certiorari is an extraordinary remedy and the decision to entertain such a petition is within this court's discretion. Zamarippa v. First Judicial District Court, 103 Nev. 638, 747 P.2d 1386 (1987).

"This court has often stated that the inquiry upon a petition for a writ of certiorari is limited to whether the inferior tribunal acted in excess of its jurisdiction." Goicoechea v. District Court, 96 Nev. 287, 289, 607 P.2d 1140, 1141 (1980) (footnote omitted). Further, "[i]f it is determined that the act complained of was within the jurisdiction of the tribunal, our inquiry stops even if the decision or order was incorrect." Id.

In the instant petition, Dangberg Holdings asserts that the district court exceeded its jurisdiction in allowing the Glide Estate and the State of Nevada to intervene because the litigation between Dangberg Holdings and Douglas County had been purportedly settled. Specifically, Dangberg Holdings asserts that intervention was untimely pursuant to NRS 12.130 and NRCP 24. We disagree.

1. *The Glide Estate's and State of Nevada's motions for intervention were timely pursuant to NRS 12.130*

Dangberg Holdings contends that the district court exceeded its jurisdiction in allowing the Glide Estate and the State of Nevada to intervene because the litigation between Douglas County and Dangberg Holdings had been purportedly settled prior to their intervention. Consequently, Dangberg Holdings asserts that their intervention was untimely pursuant to NRS 12.130.

NRS 12.130 provides:

> 1. Before the trial, any person may intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both.
> 2. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant.
> 3. Intervention is made as provided by the Nevada Rules of Civil Procedure.

4. The court shall determine upon the intervention at the same time that the action is decided. If the claim of the party intervening is not sustained, he shall pay all costs incurred by the intervention.

Although the statutory language indicates that intervention must occur before trial, *see* NRS 12.130(1), we have previously explained that:

[t]he plain language of NRS 12.130 clearly indicates that intervention is appropriate only during ongoing litigation, where the intervenor has an opportunity to protect or pursue an interest which will otherwise be infringed. The plain language of NRS 12.130 does not permit intervention subsequent to the entry of a final judgment.

Lopez v. Merit Ins. Co., 109 Nev. 553, 556, 853 P.2d 1266, 1267-68 (1993). Additionally, in Ryan v. Landis, 58 Nev. 253, 260, 75 P.2d 734, 735 (1938) (quoting Henry & Lee Co. v. Elevator Co., 42 Iowa 33 (1918)), we reiterated that:

"intervention must be made before the trial commences. After the verdict all would admit it would be too late to intervene. But a voluntary agreement of the parties stands in the place of a verdict, and, as between the parties to the record as fully and finally determines the controversy as a verdict could do."

In the instant case, although Dangberg Holdings argues that its settlement offer with Douglas County operated as a final judgment that would bar subsequent intervention, our review of the record has failed to produce evidence indicating that a settlement was ever finalized prior to the Glide Estate's and State of Nevada's intervention. There is no written settlement agreement in the appendices or exhibits, and by counsel's own admission, Douglas County and Dangberg Holdings ceased work on the settlement agreement on order of the district court after the Glide Estate filed its motion to intervene on April 9, 1997. Therefore, the Glide Estate's and the State of Nevada's intervention was not barred by NRS 12.130 or this court's intervention jurisprudence.

Moreover, the State had a sufficient interest in the matter to warrant intervention because the purported settlement agreement between Douglas County and Dangberg Holdings affected property rights that had been ostensibly granted to either the State of Nevada or Douglas County by virtue of the 1977 agreement and 1978 lease agreement. Additionally, the Glide Estate's interest in realizing the conversion of the Dangberg Home Ranch and the tangible personal property therein into a historical site was sufficient to warrant its intervention as well.

Accordingly, both the Glide Estate and the State of Nevada had a sufficient interest in the Douglas County-Dangberg Holdings litigation to warrant intervention. There is no support in the record for Dangberg Holding's assertion that a settlement agreement was ever finalized or consummated. Therefore, we conclude that the Glide Estate and State of Nevada's motions for intervention were timely within the meaning of NRS 12.130, and, thus, the district court did not exceed its jurisdiction in granting intervention on this basis.

2. *The Glide Estate's and the State of Nevada's intervention was not barred by NRCP 24*

Dangberg Holdings also argues that the district court manifestly abused its discretion in allowing intervention because such intervention was untimely pursuant to NRCP 24. Specifically, Dangberg Holdings asserts that the district court manifestly abused its discretion in allowing intervention because it ignored the prejudice to Dangberg Holdings and Douglas County. In making this claim, Dangberg Holdings does not contend that the district court exceeded its jurisdiction, but instead asserts that the district court's action constituted an arbitrary and capricious exercise of discretion. Accordingly, we shall construe this issue as a request for this court's extraordinary relief by way of writ of mandamus.

A writ of mandamus may be granted to compel the performance of an act which the law requires as a duty resulting from an office, trust, or station, or to control an arbitrary or capricious exercise of discretion. *See* NRS 34.160. The decision whether to entertain a writ of mandamus is within this court's discretion and will not be issued if the petitioner has a plain, speedy, and adequate legal remedy. Poulos v. District Court, 98 Nev. 453, 455, 652 P.2d 1177, 1178 (1982); NRS 34.170.

NRCP 24 provides:

(a) **Intervention of Right**. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) **Permissive Intervention**. Upon timely application any-

one may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

(c) **Procedure**. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute gives a right to intervene.

We have previously held that the timeliness of a motion to intervene pursuant to NRCP 24 is a matter within the sound discretion of the district court. Lawler v. Ginochio, 94 Nev. 623, 626, 584 P.2d 667, 668 (1978). "The most important question to be resolved in the determination of the timeliness of an application for intervention is not the length of the delay by the intervenor but the extent of prejudice to the rights of existing parties resulting from the delay." *Id.* at 626, 584 P.2d at 669.

In the instant case, we conclude that the district court did not manifestly abuse its discretion in granting the Glide Estate's and State of Nevada's motions for intervention pursuant to NRCP 24. As previously discussed, the Glide Estate and the State of Nevada had a sufficient interest in the litigation between Dangberg Holdings and Douglas County that warranted their intervention. Moreover, the consummation of the purported Dangberg Holdings-Douglas County settlement agreement would have impeded the Glide Estate and the State of Nevada's ability to protect their interests under the 1977 agreement and 1978 lease agreement.

Although Dangberg Holdings asserts that it was prejudiced as a result of the Glide Estate's and the State of Nevada's delay in seeking intervention, our review of the record indicates that there was no significant delay. Upon learning of the purported settlement agreement in March 1997, the Glide Estate filed its motion for intervention on April 9, 1997, and the State of Nevada filed its motion on May 6, 1997. Dangberg Holdings has failed to demonstrate how it was materially prejudiced by the Glide Estate's and the State of Nevada's rather expeditious filing dates.

While we recognize that Dangberg Holdings may incur additional legal expenses as a result of the Glide Estate's and the State of Nevada's intervention, Dangberg Holdings will also derive long-term benefits from the prospect of defining its rights and

obligations with respect to all parties in one judicial proceeding. Moreover, bringing all of the parties together in one proceeding before one tribunal will foster the principles of judicial economy and finality.

Accordingly, the district court did not manifestly abuse its discretion in allowing intervention pursuant to NRCP 24.[1]

*The district court did not abuse its discretion in granting temporary injunctive relief*

Dangberg Holdings asserts that the district court abused its discretion in ordering a  preliminary injunction preventing Dangberg Holdings and Douglas County from finalizing their settlement agreement. Specifically, Dangberg Holdings contends that the Glide Estate and the State of Nevada failed to demonstrate that their success on the merits was reasonably probable, and that they would be irreparably harmed in the event that the Dangberg Holdings-Douglas County settlement agreement was finalized. We disagree.

A preliminary injunction is available if an applicant can show a likelihood of success on the merits and a reasonable probability that the non-moving party's conduct, if allowed to continue, will cause irreparable harm for which compensatory damage is an inadequate remedy. Pickett v. Comanche Construction, Inc., 108 Nev. 422, 426, 836 P.2d 42, 44 (1992); *see also* NRS 33.010.[2] The decision whether to grant a preliminary injunction is within the sound discretion of the district court, whose decision will not

[1]Based on the foregoing discussion and reasoning, we conclude that Dangberg Holdings' additional argument on appeal—that neither the Glide Estate nor the State of Nevada had a cause of action against the settlement agreement because they were legal strangers to the agreement—is without merit.

[2]NRS 33.010 provides that an injunction may be granted:

1.   When it shall appear . . . that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.

2.   When it shall appear . . . that the commission or continuance of some act, during the litigation, would produce great or irreparable injury to the plaintiff.

3.   When it shall appear, during the litigation, that the defendant is doing or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual.

be disturbed on appeal absent an abuse of discretion. Number One Rent-A-Car v. Ramada Inns, 94 Nev. 779, 781, 587 P.2d 1329, 1330 (1978).

As previously indicated, the State of Nevada received significant property rights in the ten-acre Dangberg Home Ranch for use as a state park and historical museum by virtue of the 1977 sale agreement and the recorded 1978 lease agreement. Because the validity of these prior agreements is uncontested, the State, as a beneficiary of those agreements, has a reasonable probability of success in enforcing its rights pursuant to those agreements.

In similar fashion, the Glide Estate's interest in realizing the conversion of the Dangberg Home Ranch and the tangible personal property therein into a historical museum is no less significant. Because the purported Dangberg Holdings-Douglas County settlement agreement allegedly violates the historical museum grant provisions embodied in the 1977 sale agreement and the 1978 lease agreement, we conclude that the Glide Estate has demonstrated a reasonable probability of success in ensuring that the terms of those prior agreements are enforced.

Moreover, we conclude that the district court did not abuse its discretion in finding that the Glide Estate and the State of Nevada made the requisite showing of irreparable harm and inadequacy of legal remedies. At the May 9, 1997, hearing, the State argued that its interests in maintaining the Dangberg Home Ranch as a historic state park would be irreparably damaged as a result of the settlement agreement because Dangberg Holdings could use that settlement as fulfillment of its obligations pursuant to the 1977 sale agreement and 1978 lease agreement.

Accordingly, we conclude that the Glide Estate and the State of Nevada have made the requisite showing of reasonable success on the merits and the probability of irreparable harm as a result of the Dangberg Holdings-Douglas County settlement agreement. Therefore, the district court's preliminary injunction preventing Dangberg Holdings and Douglas County from finalizing their agreement did not constitute an abuse of discretion.

1. *The district court's injunction order sets forth in sufficient detail the specific reasons for its issuance and describes in reasonable detail the act or acts to be restrained*

In a related argument, Dangberg Holdings contends that the district court's preliminary injunction must be vacated because it fails to set forth the specific reasons for its issuance and fails to describe in reasonable detail the acts to be restrained. We disagree.

In Maheu v. Hughes Tool Co., 88 Nev. 592, 598, 503 P.2d 4, 8 (1972) (quoting Brumby Metals, Inc. v. Bargen, 275 F.2d 46, 50 (7th Cir. 1960)), we explained that " '[a]n injunctive order is an extraordinary writ subject to contempt for failure to comply and thus must be set out in specific terms.' " Similarly, in Las Vegas Novelty v. Fernandez, 106 Nev. 113, 119, 787 P.2d 772, 775-76 (1990), we reiterated that an injunctive order would be nullified "wherever the reasons for the injunction are not readily apparent elsewhere in the record, or appellate review is otherwise significantly impeded due to lack of a statement of reasons."

In the instant case, the district court indicated that the reason underlying its grant of temporary injunctive relief was to prevent the finalization of an agreement that would possibly foreclose "the State of Nevada from having a park that has always been intended [and that] maybe . . . they should have." Because the rationale underlying the district court's grant of temporary injunctive relief—to temporarily prevent Dangberg Holdings and Douglas County from finalizing their settlement agreement—is readily apparent from the record, we conclude that the specificity requirement pursuant to *Las Vegas Novelty* has been satisfied.

Additionally, the district court's order described in reasonable detail the act or acts to be restrained. At the conclusion of the May 9, 1997, hearing, the district court ordered "that any further action on the purported settlement agreement between Dangberg Holdings, LLC, and Douglas County is stayed until further order of the Court." This language clearly apprised Dangberg Holdings and Douglas County that they were to be restrained from taking any further action in consummating their settlement agreement.

Accordingly, because the district court clearly specified the reason for its grant of temporary injunctive relief, and set forth in sufficient detail the act or acts to be restrained, we conclude that the district court did not abuse its discretion in granting temporary injunctive relief on this basis.

2. *The district court's injunction order is valid even though no bond or other security was posted*

Dangberg Holdings contends that the district court's May 9, 1997, temporary injunctive order is void because the district court did not require the Glide Estate to post a bond or other security. We disagree.

In relevant part, NRCP 65 provides:

> (c) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the

payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the State or of an officer or agency thereof.

We have previously held that the district court's failure to require the applicant to post security voids an order imposing a preliminary injunction. In Strickland v. Griz Corp., 92 Nev. 322, 323, 549 P.2d 1406, 1407 (1976), this court held that " '[w]here a bond is required by statute before the issuance of an injunction, it must be exacted or the order will be absolutely void.' " (quoting Shelton v. District Court, 64 Nev. 487, 494, 185 P.2d 320, 323-24 (1947)).

Although our prior cases indicate that the district court's failure to require a bond or other suitable security voids a preliminary injunction, NRCP 65(c) explicitly provides an exception to the bond requirement for state agencies such as the Nevada Division of State Parks. While Dangberg Holdings contends that the Glide Estate should still be required to post a bond, the lack of a bond with respect to the Glide Estate does not invalidate the district court's preliminary injunction due to the State's bond exemption.

While the purpose underlying the bond requirement is to protect those enjoined from damages associated with the wrongful issuance of injunctions, NRCP 65(c) also evinces a clear legislative prerogative to exempt state entities from the bond requirement. Accordingly, the district court's injunctive order is valid pursuant to NRCP 65(c) because a State agency, the Nevada Division of State Parks, was also a requesting party.

*The district court did not violate Dangberg Holdings' due process rights of notice and an opportunity to be heard in entering its temporary injunctive order*

Following the district court's grant of the Glide Estate and the State of Nevada's motions to intervene, both the Glide Estate and the State of Nevada moved the district court for a preliminary injunction to prevent Douglas County and Dangberg Holdings from finalizing their settlement agreement. On appeal, Dangberg Holdings contends that the district court's grant of the preliminary injunction violated its due process rights of notice and an opportunity to be heard. We disagree.

As previously stated, the decision whether to grant a preliminary injunction is within the sound discretion of the district court, whose decision will not be disturbed on appeal absent an abuse of that discretion. Number One Rent-A-Car v. Ramada Inns, 94

Nev. 779, 781, 587 P.2d 1329, 1330 (1978). NRCP 65(a) provides that "[n]o preliminary injunction shall be issued without notice to the adverse party."

In Farnow v. District Court, 64 Nev. 109, 118, 178 P.2d 371, 375 (1947), we explained that:

> Ex parte motions, that is, motions without notice, are of various kinds and are frequently and commonly permitted under the Nevada law and practice. They are frequently permissible in procedural matters, and also in situations and under circumstances of emergency, as in the case of an application for an injunction to prevent irreparable injury which would result from delay, and where there is no plain, speedy and adequate remedy at law.

Similarly, in Rhodes Co. v. Belleville Co., 32 Nev. 230, 239, 106 P. 561, 563 (1910), we reiterated that:

> A preliminary injunction maintaining the *status quo* may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted.

In the instant case, the Glide Estate and the State of Nevada moved the district court for a preliminary injunction only after the court had orally granted their motions to intervene. While Dangberg Holdings was provided only several minutes of notice prior to the district court's issuance of the preliminary injunction, we conclude that a temporary preservation of the status quo was appropriate in this case due to the probability of irreparable harm to the Glide Estate and State of Nevada's interests in the event that the Dangberg Holdings-Douglas County settlement agreement was finalized.

Moreover, as is evident from our review of the transcript of the May 9, 1997, hearing, Dangberg Holdings was afforded the opportunity to be heard before the district court issued its preliminary injunction. Based on our review of the record, we conclude that Dangberg Holdings was afforded a reasonable opportunity to be heard in light of the unique circumstances of this case.

Accordingly, we conclude that the district court's preliminary injunction did not violate Dangberg Holdings' due process rights because of the probability of irreparable harm to the Glide Estate's and State of Nevada's interests and the fact that Dangberg Holdings was afforded a reasonable opportunity to be heard under the circumstances.

## CONCLUSION

We conclude that the Glide Estate's and State of Nevada's motions for intervention were timely within the meaning of NRS 12.130. Additionally, the district court did not abuse its discretion in granting the Glide Estate's and State of Nevada's motions for intervention pursuant to NRCP 24 because they both demonstrated a sufficient interest in the litigation between Dangberg Holdings and Douglas County to warrant their intervention.

With respect to the district court's grant of temporary injunctive relief, we conclude that the Glide Estate and the State of Nevada have made the requisite showing of reasonable success on the merits and the probability of irreparable harm in the event that the Dangberg Holdings-Douglas County settlement agreement is finalized. Therefore, the district court's preliminary injunction preventing Dangberg Holdings and Douglas County from consummating their settlement agreement did not constitute an abuse of discretion.

Additionally, we conclude that the preliminary injunction sets forth in sufficient detail the acts to be restrained and the specific reasons for its issuance. Lastly, we conclude that the failure to require a bond is not fatal to the injunctive order because the State was a requesting party and that the district court's preliminary injunction did not violate Dangberg Holdings' due process rights.

Accordingly, we deny Dangberg Holdings' petition for extraordinary relief, and affirm the district court's issuance of a preliminary injunction.

MAUPIN, J., dissenting:

I agree with the majority that the motions to intervene were timely because the settlement was not finalized. However, for the reasons stated below, I would grant extraordinary relief.

First, intervention by the state should have been refused because the October 1995 letter from the Nevada Department of Conservation and Natural Resources, in my view, constituted an unequivocal renunciation of any interest in acceptance of the Dangberg property as a state park. As a matter of law, the letter had the net effect of waiving any right to oppose any attempt by the county to negotiate a unilateral settlement.[1]

Second, I would grant extraordinary relief with regard to the order allowing the Estate of Glide to intervene. As conceded dur-

---

[1]The state relies on an affidavit prepared by the author of the letter in an attempt to create an issue of fact on its waiver of any interest in the property. The affidavit interprets the waiver as merely conditional to the county's use of the land as a park. The terms of the letter are inconsistent with that proposition.

ing the oral argument of this matter, the estate had no claims to the personal property involved in the proposed settlement. Thus, any problems with other pieces of personal property should have been resolved in a separate suit. Further, the instrument creating the option of the state and county to acquire the property contemplates the possibility that either the state or the county, or both, could reject the museum concept outright. Accordingly, once the state renounced its interest, Douglas County was entitled to make whatever arrangement it could reach with Dangberg Holdings short of or including outright refusal of the property. The estate had no interest in the outcome of these matters.