OPINION
By the Court,
Hardesty, J.:
In Nevada, when a third party is at fault for an industrial accident, the workers’ compensation insurer that paid benefits to the injured worker has a lien upon any proceeds that the worker recovers from the tortfeasor, so that the insurer’s payments are reimbursed, ultimately, by the tortfeasor. During the proceedings underlying this writ petition, to protect its lien on any proceeds recovered by the injured worker to whom it provided benefits, a workers’ compensation insurer asked the district court to allow it to intervene in the injured worker’s tort litigation. Although the insurer contended that it had an absolute right to intervene in the litigation under our 1995 decision in State Industrial Insurance System v. District Court,[2] the district court denied the insurer’s application. Accordingly, the insurer has brought this original petition for a writ of mandamus, requesting us to direct the district court to allow it to intervene in the injured worker’s case.
Because our 1995 decision is unsupportable under the law, however, we overrule it. We conclude that a workers’ compensation insurer may intervene in an injured worker’s litigation to protect its right to reimbursement only if it meets certain requirements, which include showing that the injured worker cannot adequately represent the insurer’s interest in the subject matter of the litigation. *1233 Because the insurer here failed to show that its interest was inadequately represented by the injured worker, we deny the insurer’s request for extraordinary relief.

FACTS

Real party in interest Titanium Metal Corporation (Timet) hired real party in interest Guardsmark, Inc., to provide onsite security services. Guardsmark employed real party in interest David Carlton Madison, Jr., as a security guard. While on duty, Madison fell into an abandoned furnace pit on Timet’s property. As a result of the fall, Madison suffered severe, debilitating injuries, for which he received workers’ compensation benefits from Guardsmark’s insurer.
Madison then filed a personal injury action against Timet in December 2003, alleging several negligence theories as bases to recover damages. Timet filed a third-party complaint against Guardsmark for express and implied indemnity, and contribution.
In April 2006, over three years after the accident and approximately two-and-one-half years after Madison filed suit, Guards-mark’s workers’ compensation insurer, petitioner American Home Assurance Company (AHAC), moved to intervene in Madison’s personal injury action for purposes of recovering the workers’ compensation benefits that it had paid (and will pay) to Madison. Attached to its motion was a “complaint-in-intervention for reimbursement of workers’ compensation benefits,” alleging the same negligence claims against Timet as were alleged in Madison’s complaint and requesting both damages and a lien against any judgment in favor of Madison, in the amount of the benefits that it paid to Madison. At the time AHAC sought to intervene, a June 2, 2006 discovery cut-off date was in place, and trial was scheduled to begin on September 5, 2006.
Both Madison and Timet opposed the motion to intervene, arguing that AHAC’s complaint in intervention constituted an attempt to assert an independent cause of action against Timet and was thus subject to dismissal under the statute of limitations.[3] Further, they argued, given that the intervention complaint did not even contain the word “subrogation,” it could not be construed as an effort to enforce a subrogation lien. All parties acknowledged that AHAC retained subrogation lien rights over any recovery Madison obtained and that AHAC could enforce those rights after any settlement was reached or any judgment was entered. Madison pointed out, however, that if AHAC did not intervene in the action, it would be responsible for contributing its share of the litigation expenses when collecting on its lien, as set forth in Breen v. Caesars Palace [4] Madison asserted that AHAC should not be permitted to *1234 intervene at such a late date, as it attempted to do so merely to avoid paying its proportionate share of the litigation costs.
The district court denied AHAC’s motion to intervene, determining that AHAC was attempting to assert an independent cause of action against Timet, which was time-barred. The court further found that AHAC’s lien rights were adequately protected, as the parties were on notice that the lien would apply, subject to an offset for AHAC’s portion of the litigation expenses, as required under Breen.
AHAC consequently filed the instant writ petition, challenging the district court’s order denying it leave to intervene. As directed, Madison timely filed an answer, arguing that AHAC’s intervention was not appropriate under these circumstances and, therefore, writ relief was not warranted. We stayed the underlying action pending our resolution of AHAC’s petition for extraordinary writ relief.

DISCUSSION

A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust or station,[5] or to remedy a manifest abuse of discretion.[6] Mandamus is available only when petitioner has no plain, speedy, and adequate legal remedy,[7] and whether we will consider a petition for the extraordinary remedy of mandamus is entirely within our discretion.[8] The petitioner bears the burden of demonstrating that mandamus relief is warranted.[9]
We have determined that our discretionary consideration of this petition is appropriate because AHAC has no other adequate means by which to challenge the district court’s refusal to allow it to intervene in the underlying suit.[10] After considering the petition and answer thereto, however, we conclude that extraordinary writ relief is not warranted. Specifically, even though AHAC has an interest in Madison’s litigation of his personal injury claims, the district court has discretion in deciding whether AHAC has shown that intervention is appropriate so that it may promote or protect that interest. We conclude that the district court did not manifestly abuse its discretion when it denied AHAC leave to intervene, given Madison’s ability to adequately represent AHAC’s interest.

*1235
Intervention is within the district court’s discretion

AHAC argues that, in accordance with this court’s decision in State Industrial Insurance System v. District Court (SIIS),[11] it may automatically intervene in Madison’s suit against Timet as a matter of right. Accordingly, AHAC argues, the district court was obligated to allow it to intervene. Because we determine that our conclusion in SIIS, that an insurer has an absolute right to intervene in an injured worker’s lawsuit, is not supportable under Nevada law, and because the district court did not abuse its discretion in disallowing AHAC’s intervention, we disagree.

Nevada law

NRS 12.130 allows, before the trial commences, “any person . . . who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both” to intervene in an action under the Nevada Rules of Civil Procedure (NRCP).[12] NRCP 24 governs intervention, providing for both intervention of right and permissive intervention. At issue here, NRCP 24(a) directs the district court to approve a timely application to intervene of right when either (1) a statute grants an unconditional right to intervene, or (2) “the applicant claims an interest relating to the [subject] property . . . and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant’s ability to protect that interest, unless the applicant’s interest is adequately protected by existing parties.”[13] An application to intervene must be “accompanied by a pleading setting forth the claim ... for which intervention is sought.”[14]
In SIIS, we ultimately concluded that the industrial insurer had a right to intervene under both subsections (1) and (2) of NRCP *1236 24(a).[15] First, a majority of the SIIS court concluded that, under NRAP 24(a)(1), statutory intervention rights existed. The majority noted that NRS 616C.215 (formerly NRS 616.560) provides that when a workers’ compensation insurer pays benefits to an injured worker, it becomes subrogated to the injured workers’ right to recover damages from a third-party tortfeasor. Then the majority pointed out that, by asserting its subrogation rights, an insurer could obtain reimbursement in one of two different ways: the insurer could either enforce a lien statutorily imposed on any proceeds recovered by the injured worker or assert an independent action against the negligent third party.[16] The majority determined that ‘ ‘this latter form of reimbursement, when literally applied, is a statutory right of intervention.”[17] Thus, even though neither NRS 616C.215 nor any other statute expressly grants an industrial insurer the unconditional right to intervene in an injured worker’s lawsuit, the majority concluded that such a right nonetheless exists.
The majority went on to explain that, since the industrial insurer had a right to sue the third-party tortfeasor independently, in which case all the same parties would necessarily be joined, the same amalgamation would occur if the insurer were simply allowed to intervene in the worker’s suit, especially as the two separate actions would be providently consolidated.[18] Therefore, the majority concluded, although not an express statutory right, the unconditional right to intervene under NRCP 24(a)(1) “exists by practical application.”[19]
The majority also concluded that intervention was also appropriate under NRCP 24(a)(2) because the injured worker’s representation was inadequate to “preservfe] the integrity of [the insurer’s] statutory lien.”[20] In so concluding, the majority noted that, under Breen v. Caesars Palace,[21] an employer (or an employer’s insurer) that is reimbursed by way of its lien is required to “reduce the amount of its lien recovery by a proportionate share of the litigation expenses,” so that the employer or its insurer does not receive a windfall.[22] Thus, in SIIS, the majority deemed intervention appropriate to allow the insurer to expend its own monies and *1237 efforts to obtain reimbursement, and thereby avoid the reduction of any lien recovery under the Breen formula.[23]
But our review of this petition leads us to conclude that the SIIS majority’s analysis is flawed, in respect to both subsections (1) and (2) of NRCP 24(a). First, NRCP 24(a)(1) does not apply, as no statutory right to intervene exists. Second, intervention under NRCP 24(a)(2) is only appropriate when that subsection’s requirements have been met.

Intervention under NRCP 24(a)(1) is inapplicable

As even the SIIS majority acknowledged, NRCP 24(a)(1) requires that a statute “confer[ ] an unconditional right to intervene,” and no such statute has been enacted. Thus, an unconditional right of intervention, as necessary to intervene under NRCP 24(a)(1), does not exist in Nevada. The majority’s “practical” result, which creates an absolute statutory right of intervention when the Legislature has not done so, may operate unfairly to any injured worker who does not desire the insurer’s intervention, in any case in which the insurer’s intervention is unwarranted or inappropriate.
The two concurring justices in SIIS apparently recognized the injustice that could result from such an inflexible rule allowing an insurer to intervene in every injured worker’s case. The SIIS concurrence provided that, in the absence of direct legislative direction, the court should not alter the district courts’ prior practice to exercise discretion when determining whether intervention was appropriate.[24] Further, the concurrence pointed out, the Legislature has protected an insurer’s right to recoup its costs by not only imposing a statutory lien on any proceeds an injured worker may obtain, but also by permitting it to bring an independent action, based on its subrogation rights, if necessary.[25] Accordingly, the concurring justices suggested, the insurer has no need to intervene in every injured worker’s lawsuit, and the district court should be able to deny intervention when an insurer’s “involvement in the case is unwarranted and would unduly complicate the issues and mislead the jury.”[26]
We agree with the concurring justices that intervention of right should be available only after the district court, exercising its *1238 discretion, determines that the applicant has met the NRCP 24(a)(2) requirements and the applicant’s intervention is otherwise appropriate.[27] Accordingly, in the action underlying this petition, AHAC had no absolute right to intervene under NRCP 24(a)(1), and we proceed to its assertion that intervention should have been allowed under NRCP 24(a)(2).

Intervention is appropriate under NRCP 24(a)(2) only when all the requirements of that subsection have been met

As noted, to intervene under NRCP 24(a)(2), an applicant must meet four requirements: (1) that it has a sufficient interest in the litigation’s subject matter, (2) that it could suffer an impairment of its ability to protect that interest if it does not intervene, (3) that its interest is not adequately represented by existing parties, and (4) that its application is timely. Determining whether an applicant has met these four requirements is within the district court’s discretion.[28]
Normally, a workers’ compensation insurer will be able to meet the first two requirements. With respect to the third factor, AHAC has not shown that Madison cannot adequately represent its interests. Accordingly, we do not determine the timeliness of AHAC’s application.

Generally, a workers’ compensation insurer has an interest in the injured worker’s litigation against an alleged tortfeasor

With regard to the first NRCP 24(a)(2) requirement, that the applicant show a sufficient interest in the litigation’s subject matter, we note that, as federal courts have recognized in interpreting the equivalent federal rule, no “bright-line” test to determine an alleged interest’s sufficiency exists.[29] A general, indirect, contin *1239 gent, or insubstantial interest is insufficient, however.[30] Instead, an applicant must show a “significantly protectable interest.”[31] A “significantly protectable interest” has been described, by the Ninth Circuit Court of Appeals, as one that is protected under the law and bears a relationship to the plaintiff’s claims.[32]
With respect to these two components of “significantly pro-tectable interest,” a workers’ compensation insurer’s interest in obtaining reimbursement through its subrogation right is protected under law and arises out of the same events as do an injured worker’s claims. Thus, the insurer generally has an interest sufficient to intervene under NRCP 24(a)(2). As noted, under NRS 616C.215, a workers’ compensation insurer is subrogated to the injured workers’ right to recover against a tortfeasor.[33] Through its subrogation right, the insurer “bec[omes] at least a partial owner of [the] cause of action.”[34] Indeed, under Nevada law, the insurer obtains such a significant interest in the injured workers’ claims as the result of its subrogation right, that it may itself sue the alleged tortfeasor, even if the injured worker does not.[35] Consequently, as the provider of Madison’s workers’ compensation benefits, AHAC shares, by subrogation, a legally protectable interest in Madison’s claims against Timet.[36]
Although AHAC’s subrogation rights create a sufficient interest to intervene under NRCP 24(a)(2), its lien rights do not. The subject matter of Madison’s litigation — whether Timet was negligent— *1240 is significantly different than the question of whether AHAC may recover on its statutory lien. AHAC’s lien recovery is contingent upon Madison successfully resolving his claims, and the lien’s existence does not give AHAC the right to maintain a claim for negligence against Timet.[37] Accordingly, simply because AHAC has a lien on any proceeds recovered in Madison’s litigation does not give it an interest in participating in Madison’s attempt to prove that Timet’s negligence resulted in a certain amount of damage to Madison. Thus, AHAC’s interest in Madison’s suit arises solely in connection with its subrogation to Madison’s right to recover.[38]

Generally, a workers’ compensation insurer’s ability to protect its interest could be impaired by the disposition of the injured worker’s action

NRCP 24(a)(2)’s second requirement is met if the district court determines that the insurer’s ability to protect its interest in the litigation’s subject matter might be impaired by the disposition of the injured worker’s action. Because the injured worker and the insurer share “but one cause of action,”[39] the disposition of the injured worker’s action necessarily impacts the insurer’s subrogation interest. And as, generally, only one final outcome of the claims against the alleged tortfeasor on account of the industrial injury may exist, once the injured worker’s case is resolved, whether by *1241 judgment, dismissal with prejudice, or settlement, the insurer no longer has any right to proceed with a separate action against the alleged tortfeasor, even if any recovery the injured worker obtains is insufficient to fully reimburse the insurer’s expenses.[40] Thus, in the proceedings below, “as a practical matter,” AHAC’s ability to protect its interest may be impacted by the resolution of Madison’s action.[41]

Whether existing parties adequately represent the workers’ compensation insurer’s interest is determined by the particular facts of each case

But, under NRCP 24(a)(2)’s third requirement, the insurer has no right to intervene if its interest is adequately represented by the injured worker. Although the applicant insurer’s burden to prove this requirement has been described as “minimal,” when the insurer’s interest or ultimate objective in the litigation is the same as the injured worker’s interest or subsumed within the worker’s objective, the injured worker’s representation should generally be adequate, unless the insurer demonstrates otherwise.[42]
To explain, most injured workers undoubtedly will strive to obtain the greatest amount in damages warranted under the circumstances. Consequently, the insurer’s objective in obtaining from the tortfeasor an amount sufficient to fully reimburse its costs is com *1242 pletely subsumed within the injured worker’s objective.[43] Thus, unless the insurer can show that the injured worker has a different objective, adverse to its interest, or that the worker otherwise may not adequately represent their shared interest, the worker’s representation is assumed to be adequate.[44] And the longer an insurer waits after the litigation commences before applying to intervene,[45] the more the insurer’s acceptance of the injured worker’s representation as adequate can be implied, and the stronger the showing to the contrary must be to overcome that inference.
Here, AHAC has not shown that Madison may not adequately protect its interest in recovering damages from Timet. As mentioned, AHAC did not try to intervene in Madison’s litigation until approximately two-and-one-half years after it was instituted, shortly before the discovery cut-off date, and only a few months before trial was scheduled to commence. Thus, although AHAC might have more easily met this requirement’s “minimal” standard if it had applied to intervene early on, its failure to do so until after Madison had completed much of the pretrial litigation makes AHAC’s burden more difficult because it suggests that it is comfortable with how Madison has proceeded with the case.
Even so, AHAC has not even suggested, much less demonstrated, that Madison is not fully and competently prosecuting his case.[46] And AHAC has pointed to no recently discovered information indicating that Madison’s interest is somehow adverse to its interest. Further, the district court, which has had ample opportunity to assess Madison’s representation, has found that his representation adequately protects AHAC’s interest. As the court pointed out, *1243 all parties are aware of AHAC’s interest in any recovery, and Madison has expressly recognized AHAC’s right to be reimbursed from any proceeds.
Nevertheless, AHAC argues that, because Madison’s interest lies in maximizing his recovery, Madison cannot adequately represent its contrasting interest in avoiding the lien amount’s reduction (by its proportionate share of the litigation expenses) under Breen,[47] As noted above, however, AHAC’s right to intervene in Madison’s litigation is based on its direct interest, arising from subrogation, in the litigation’s subject matter, not in its interest in asserting and protecting the size of its anticipated lien on any recovery. Although the SIIS majority indicated that intervention is appropriate because an injured worker cannot adequately represent an insurer’s interest in avoiding payment of its proportionate share of the litigation costs under Breen, that reasoning is based on the insurer’s ability to protect an interest for which no right to inter *1244 vene exists. Accordingly, we disprove of the SIIS majority’s reasoning.[48]

Determining whether an application is timely requires balancing any prejudice to the parties

NRS 12.130(1) provides that an applicant may intervene “[bjefore the trial.” As we have previously recognized, however, even when made before trial, an application must be “timely” in the sense afforded the term under NRCP 24. Determining whether an application is timely under NRCP 24 involves examining “ ‘the extent of prejudice to the rights of existing parties resulting from the delay’ ”[49] and then weighing that prejudice against any prejudice resulting to the applicant if intervention is denied. Further, the timeliness of an application may depend on when the applicant learned of its need to intervene to protect its interests.[50] Thus, in deciding whether an application is timely, the district court must consider the length of delay and the reasons therefore, in light of the applicant’s obligation under Breen to share in the litigation expenses.
As AHAC’s application to intervene was properly denied based on its failure to meet the NRCP 24(a)(2) requirements, however, we do not further discuss the timeliness of its application, other than as it relates to the third NRCP 24(a)(2) requirement.[51]

CONCLUSION

As our prior opinion in SIIS included a flawed analysis, we overrule that decision. Thus, AHAC has no absolute right to intervene *1245 in Madison’s third-party tort action under NRCP 24(a)(1) and could have intervened under NRCP 24(a)(2) only if it was able to show that Madison might not adequately represent its interest. Since AHAC waited until shortly before the trial to seek intervention and failed to show that Madison’s representation was inadequate, the district court did not abuse its discretion in denying AHAC’s intervention application. Consequently, we conclude that extraordinary writ relief is not warranted. Accordingly, we deny this writ petition and vacate our stay of the underlying proceedings.
Rose, C. J., Becker, Gibbons, Douglas and Parraguirre, JJ., concur.

 111 Nev. 28, 888 P.2d 911 (1995).

 Apparently, Guardsmark did not object to AHAC’s intervention.

 102 Nev. 79, 715 P.2d 1070 (1986).

 See NRS 34.160.

 See Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981).

 NRS 34.170.

 See Smith v. District Court, 107 Nev. 674, 818 P.2d 849 (1991).

 Pan v. Dist. Ct., 120 Nev. 222, 228, 88 P.3d 840, 844 (2004).

 See SIIS, 111 Nev. 28, 888 P.2d 911.

 111 Nev. 28, 888 P.2d 911.

 NRS 12.130(1); NRS 12.130(3). By intervening, the applicant becomes a party to the action in order to do one of the three following things: (1) join the plaintiff in the complaint’s demand; (2) resist, with the defendant, the plaintiff’s claims; or (3) make a demand adverse to both the plaintiff and the defendant. NRS 12.130(2).

 NRCP 24(a). As the parties have not addressed intervention under NRCP 24(b), this opinion does not address whether AHAC’s intervention may have been appropriate under that subsection. Thus, we make no comment on whether a workers’ compensation insurer may properly intervene under NRCP 24(b) to protect its subrogation rights.

 NRCP 24(c). Accordingly, AHAC properly submitted a complaint-in-intervention that reiterated Madison’s negligence claims against Timet and requested reimbursement, even though it did not mention subrogation. See also NRS 12.130(2) (“An intervention takes place when a third person . . . join[s] the plaintiff in claiming what is sought by the complaint.”); Nichols v. Lighthouse Restaurant, Inc., 716 A.2d 71, 76 (Conn. 1998) (approving of an intervening employer’s complaint that “repeats all the allegations of the plaintiff’s complaint” and indicates that the employer was required to pay benefits to the injured employee).

 111 Nev. 28, 888 P.2d 911.

 NRS 616C.215(2)(b), (5); SIIS, 111 Nev. at 31, 888 P.2d at 913 (recognizing the insurer’s interpretation of the statutory scheme).

 SIIS, 111 Nev. at 32, 888 P.2d at 913.

 Id.

 Id.

 Id. at 33, 888 P.2d at 914.

 102 Nev. 79, 715 P.2d 1070.

 SIIS, 111 Nev. at 33, 888 P.2d at 914; see also Breen, 102 Nev. at 84-85, 715 P.2d at 1073-74.

 SIIS, 111 Nev. at 33, 888 P.2d at 914.

 Id. at 34, 888 P.2d at 914 (Rose and Shearing, JJ., concurring) (disagreeing with the majority’s conclusion that NRS 616C.215 gives, by “practical application,” an insurer the absolute right to intervene under NRCP 24(a)(1)).

 See NRS 616C.215.

 SIIS, 111 Nev. at 34, 888 P.2d at 914 (Rose and Shearing, JJ., concurring).

 Id.

 See Dangberg Holdings v. Douglas Co., 115 Nev. 129, 141, 978 P.2d 311, 318 (1999) (providing that the timeliness of an NRCP 24 motion to intervene is directed to the district court’s sound discretion) (citing Lawler v. Ginochio, 94 Nev. 623, 626, 584 P.2d 667, 668-69 (1978) (recognizing that this court may look to the federal courts’ interpretations of similar federal rules for guidance)); Nish v. Cohen, 191 F.R.D. 94, 96 (E.D. Va. 2000) (noting that “[a] district court is entitled to the full range of reasonable discretion in determining whether [the FRCP 24(a)(2)] requirements are met” (citing Rios v. Enterprise Ass’n Steamfitters Local Union, 520 F.2d 352, 355 (2d Cir. 1975))).

 See, e.g., Southern California Edison Co. v. Lynch, 307 F.3d 794, 803 (9th Cir. 2002) (discussing Federal Rules of Civil Procedure 24(a)(2)); Executive Mgmt. v. Ticor Title Ins. Co., 118 Nev. 46, 53, 38 P.3d 872, 876 (2002) (recognizing that federal decisions involving the federal civil procedure rules are persuasive authority when this court examines its equivalent rules).

 Lynch, 307 F.3d at 803; Dairy Maid Dairy, Inc. v. U.S., 147 F.R.D. 109, 111 (E.D. Va. 1993).

 Donaldson v. United States, 400 U.S. 517, 542 (1971), superseded in part by statute, as stated in Ip v. U.S., 205 F.3d 1168, 1172 (9th Cir. 2000), and cited in Sierra Club v. EPA, 995 F.2d 1478, 1482 (9th Cir. 1993).

 Lynch, 307 F.3d at 803; see also Sierra Club, 995 F.2d at 1482-84.

 NRS 616C.215(2)(b).

 Geneva Const. Co. v. Martin Transfer & Storage Co., 114 N.E.2d 906, 911 (Ill. App. Ct. 1953); see also Laffranchini v. Clark, 39 Nev. 48, 60, 153 P. 250, 254 (1915) (recognizing that a subrogated party “step[s] into the shoes” of the subrogee, so that the same statute of limitations applies to both).

 NRS 616C.215(2)(b); see also Heyman v. Exchange Nat. Bank of Chicago, 615 F.2d 1190, 1193 (7th Cir. 1980) (recognizing that a sufficient interest is one so direct that it gives the applicant “a right to maintain a claim for the relief sought”).

 See Kelley v. Summers, 210 F.2d 665, 673 (10th Cir. 1954) (recognizing that an insurer’s subrogation to the right to sue another in tort is “sufficient interest in the subject matter of the litigation to intervene as a matter of right”). We note that, while AHAC’s interest in Madison’s claims is closely related to the litigation’s subject matter, it is not identical to Madison’s interest in the litigation, since it rises only to the level of the compensation AHAC is obligated to pay to Madison on account of his injuries.

 See supra note 35; NRS 616C.215(2)(b); see also Sierra Club, 995 F.2d at 1483 (noting that “the issue is participation in a lawsuit, not the outcome”).

 See, e.g., Hyland v. 79 West Monroe Corp., 118 N.E.2d 636, 638 (Ill. App. Ct. 1954) (recognizing that an employer’s interest in asserting a workers’ compensation lien in its injured worker’s lawsuit against a third-party tortfea-sor was collateral to the worker’s litigation and, as the employer did not purport to be a party plaintiff, its intervention was not warranted); Hudson v. Jarrett, 606 S.E.2d 827, 831 (Va. 2005) (noting distinguishable cases in which an insurer’s intervention was allowed to protect a compensation lien, but disallowing intervention to do so in that case because the applicant insurers had lien rights but no corresponding cause of action in tort, and thus could not assert any “right involved in the [injured worker’s tort] suit,” such that the issues resolved would affect the lien, noting that the insurers could recover under their lien without proving the alleged tortfeasor’s liability to the injured worker).

 Marquette Casualty Co. v. Brown, 103 So. 2d 269, 272 (La. 1958). Because the insurer and the injured worker share one cause of action, the expiration of the applicable limitations period does not bar intervention. Id.; Arthur Larson, Larson’s Workers’ Compensation Law § 120.03[3] (2003) [hereinafter Workers’ Compensation Law}; see also Jordan v. Superior Court, 172 Cal. Rptr. 30 (Ct. App. 1981); Nichols v. Lighthouse Restaurant, Inc., 716 A.2d 71, 76, 78 (Conn. 1998) (concluding that the limitations period was tolled by the injured worker’s timely filing of a complaint against the third-party tortfeasor); Geneva Const. Co. v. Martin Transfer & Storage Co., 114 N.E.2d 906, 912 (Ill. App. Ct. 1953); Guillot v. Hix, 838 S.W.2d 230, 232, 235 (Tex. 1992) (tolling the limitations period).

 See Smith v. Hutchins, 93 Nev. 431, 566 P.2d 1136 (1977) (recognizing that, normally, separate actions may not be maintained on one cause of action, but nevertheless allowing a personal injury plaintiff to proceed with an action for which his insurer had already obtained a judgment, under the particular circumstances noted) (citing Reardon v. Allen, 213 A.2d 26 (N.J. Super. Ct. Law Div. 1965) (discussing relevant authorities and recognizing that, because an insurer is subrogated to the rights of its insured, once the insured obtains a judgment, the insurer usually cannot maintain an action arising out of its sub-rogation rights)); see generally Sierra Club, 995 F.2d at 1486 (recognizing that, when the “case at bar would have controlling force on those issues” to which the prospective intervenor holds an interest, such as through operation of stare decisis, the prospective intervenor has met the second requirement of the FRCP equivalent to NRCP 24(a)(2), in that the intervenor’s ability to protect that interest “would necessarily result in [its] practical impairment” if intervention is not allowed).

 See, e.g., Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 420 F.2d 1103, 1115 (5th Cir. 1970) (recognizing “that where the state workmen’s compensation law permits subrogation of a compensation carrier, the carrier is entitled to intervene as a matter of right”).

 Dairy Maid Dairy, 147 F.R.D. at 112 (citing Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)); 6 James Wm. Moore, et al., Moore’s Federal Practice § 24.03[4][a][ii] (3d ed. 2006) (noting that when interests or objectives are identical, a presumption of adequate representation may arise, absent “adversity of interest, collusion or nonfeasance”).

 See, e.g., Breen, 102 Nev. at 87, 715 P.2d at 1074-75 (defining the scope of an employer’s (or an employer’s insurer’s) lien on the injured worker’s “total proceeds” as including the right to reimbursement from the worker’s recovery of damages for noneconomic losses).

 See Hughes v. Newton, 324 So. 2d 270 (Ala. 1975) (recognizing that an insurer’s intervention in an injured worker’s suit usually is not necessary to protect its subrogation interest, and noting circumstances in which intervention might be warranted because the worker is unable to adequately protect the insurer’s interest).

 We note that, under NRS 616C.215(7), the injured worker must provide written notification to the workers’ compensation insurer before commencing an action against a third-party tortfeasor.

 Although, in the district court, AHAC suggested that its intervention was warranted to allow it to conduct expert discovery, it did not further explain what expert discovery, the completion of which was not anticipated by Madison, it believed was necessary. See McGinnis v. United Screw & Bolt Corp., 637 F. Supp. 9, 11 (E.D. Pa. 1985) (finding no inadequacy of representation when the insurer fails to show collusion, adverse interest, or less-than-diligent prosecution).

 AHAC also summarily asserts that intervention is warranted so that it can defend claims of employer negligence, citing Aceves v. Regal Pale Brew. Co., 595 P.2d 619 (Cal. 1979), overruled in part on other grounds by Privette v. Superior Court (Contreras), 854 P.2d 721 (Cal. 1993). In Aceves, the California court reduced an insurer’s reimbursement claim by the percentage of fault attributable to the employer, ultimately denying reimbursement because the insurer had paid less than the amount constituting the employer’s percentage share of responsibility. Id. As Madison notes, the case cited by AHAC is based on California law, and this court has never determined whether, in Nevada, an insurer’s reimbursement from third-party proceeds may be impacted by the employer’s concurrent negligence. See generally Workers’ Compensation Law, supra note 39, at § 120.02[3] (discussing various jurisdictions’ differing responses to third-party tortfeasors’ allegations that the employer was concurrently negligent); Outboard Marine Corp. v. Schupbach, 93 Nev. 158, 165, 561 P.2d 450, 454 (1977) (recognizing that employers are generally immune from suit and from third-party equitable indemnity claims); cf. Santisteven v. Dow Chemical Company, 362 F. Supp. 646, 651 (D. Nev. 1973) (interpreting Nevada law to allow a third-party tortfeasor to offset the judgment against him “by the amount of the compensation paid to the injured employee if he can prove that the concurrent negligence of the employer contributed to the injuries”).
We do not reach this issue now, however, as AHAC neither attempted to intervene in the district court to help Guardsmark defend against the third-party complaint, see NRS 12.130(2) and Nye County v. Washoe Medical Center, 108 Nev. 490, 493, 835 P.2d 780, 782 (1992) (noting that this court generally will not consider arguments not raised before the district court), nor fully addressed this argument in its writ petition, see NRAP 21(a); Pan v. Dist. Ct., 120 Nev. 222, 228, 88 P.3d 840, 844 (2004). In any case, AHAC has not even suggested that Guardsmark is unable to adequately defend such claims. Cf. Scammon Bay Association, Inc. v. Ulak, 126 P.3d 138, 143-45 (Alaska 2005) (recognizing that intervention was not warranted until the employer discovered that the injured worker would not adequately represent its interest).

 As we determine that AHAC’s intervention was unwarranted in this instance, we do not decide whether to extend Breen’s cost-sharing formula to subrogation claims or the extent to which equity might require a proportionate sharing of litigation expenses in cases where intervention is found to be warranted at a late date.

 Dangberg Holdings, 115 Nev. at 141, 978 P.2d at 318 (quoting Lawler, 94 Nev. at 626, 584 P.2d at 669).

 See generally Ulak, 126 P.3d at 143; see also supra note 47.

 Additionally, we note that Madison contended that intervention was inappropriate because the workers’ compensation benefits were, in reality, provided by the same entity as is Timet’s liability insurer. As the district court did not address this contention and as we determine that intervention was unwarranted on other grounds, we do not reach this issue, except to note that such a contention is properly considered when the district court is exercising its discretion in deciding an application. See generally Workers’ Compensation Law, supra note 39, at § 116.06 (discussing the conflict of interest that arises when the insurer is present on both sides of the litigation — as the workers’ compensation provider and as the alleged tortfeasor’s liability insurer).